# SUPREME JUDICIAL COURT

### FOR THE

## COUNTY OF PLYMOUTH, OCTOBER TERM 1864, AT PLYMOUTH.

PRESENT:

Hon. GEORGE T. BIGELOW, CHIEF JUSTICE.
Hon. THERON METCALF,
Hon. EBENEZER R. HOAR, } JUSTICES.
Hon. REUBEN A. CHAPMAN,

---

## EPHRAIM S. JENKINS *vs.* PELEG STETSON.

A bond by an heir apparent that he will devise an estate which may come to him by descent is valid, if entered into fairly, on an adequate consideration, with the assent of the ancestor, and if the bargain is not unconscionable, or obtained by oppression, or by taking unjust advantage of the necessities of the heir.

It is not sufficient proof of a breach of a bond to support another during his natural life, to show that he left the house of the person bound to furnish such support and resided elsewhere for several years, without at any time requesting him to fulfil his agreement or in any way exhibiting to him an intention or desire to hold him to the performance thereof.

A bond to bequeath to another " all my personal estate, of every description, as well what I now have in possession as what I may receive at the decease of my mother," is broken by the act of the obligor in leaving at his death a duly executed will, which is proved and allowed in the probate court, and by which the property is conveyed to a different person; and an action may be brought for the breach thereof before the executor has settled the estate in the probate court, and been charged with a balance in his hands.

Such a bond is not void for uncertainty, although it contains a provision that the obligor may have the management and use of the property during life, and does not provide any means of ascertaining with accuracy what property is covered by its terms.

An action at law lies upon such a bond.

CONTRACT brought against the executor of the will of Polly Gurney, to recover damages for the breach of a bond executed by said Polly and her brother Ira, dated January 16th 1833.

At the trial in the superior court, before *Russell*, J., the bond was read in evidence, and the material portion of its condition was as follows : " Whereas the said Jenkins has this day given his bond to support us and our mother, Sarah Gurney, for and during the term of our natural lives, and we, on our part, in consideration of his undertaking, have this day quitclaimed to him all our right in the homestead farm left us by our father, and also we further agree to leave to him and his heirs all our personal estate, of every description, as well what we now have in possession as what we may receive at the decease of our mother, if we should survive her, and it being our wish to retain in our own hands the said personal estate, that we may have the management and use of it during our lives ; now therefore if, at our decease, or at any time prior, if we shall so agree, the said personal estate, with the exception of the household furniture, which the said Polly retains in her own hands and at her own disposal forever, shall come into the hands and possession of the said Jenkins or his heirs by will or otherwise, so that he and they shall have the quiet and peaceable possession thereof, then this obligation shall be void ; otherwise, shall remain in full force." The bond of Jenkins, above referred to, was put into the case.

At about the time of the execution of these bonds the plaintiff moved into the north half of the dwelling-house on the homestead farm of John Gurney, deceased, husband of said Sarah Gurney. Said Sarah, Ira and Polly Gurney continued to reside in the south part of the same. The two former resided there and were supported by the plaintiff, with such assistance as they themselves and Polly Gurney rendered, until their deaths, in 1848 and 1855. Said Polly lived there and was supported in the same way until June 1st 1855, when she went to the house of the defendant, her brother in law, in East Bridgewater, where she resided until her death, May 21st 1860.

The will of Polly Gurney, dated January 23d 1858, duly proved and allowed, by which she bequeathed all her property equally to her sister, Mrs. Stetson, and another sister, was introduced in evidence, and it was admitted by the defendant that considerable personal estate of the testator came into his hands as executor.

There was no evidence that the plaintiff, who knew that the said Polly was living with the defendant, ever furnished or offered to furnish any support for her there, or that he was ever requested so to do, but the plaintiff once asked said Polly to return to his house and offered to support her there; and she once requested him to have the bond in suit and his bond to her given up and cancelled; but the plaintiff declined to accede to her request.

The defendant contended that the part of the bond which provided that the plaintiff should have what the said Polly might receive on her mother's decease was void as against the policy of the law; but the objection was overruled.

The defendant also asked the court to instruct the jury that, inasmuch as the said Polly had a right under the bonds to require the plaintiff to support her at the house of said Stetson, and as the plaintiff knew of the choice of said Polly to live there, and as she had lived there for the last five years of her life, and as he had neglected to support her or to pay her board at said Stetson's, there was not evidence to warrant the jury to find that the bond was forfeited; and that it was the duty of the plaintiff to seek out the said Polly and to furnish her a suitable support or pay her board at said Stetson's; but the judge ruled otherwise, and instructed the jury that, without previous notice and request to the plaintiff so to do, it was not his duty to go and provide her maintenance or pay her board at the defendant's house; and that the plaintiff's neglect in that regard during the last five years of her life was not a failure to comply with the provisions of his obligation, so as to prevent a breach of the bond in suit.

The defendant offered in evidence a bond of said Polly to him, dated September 5th 1856, with condition to leave to him

" all the personal estate, goods and effects which I may possess at the time of my decease," and also his bond to her of the same date, with condition for her support. This evidence was offered as tending to prove that the plaintiff was bound to support her at the defendant's house, and as a bar to the plaintiff's claim of forfeiture of her bond to him ; but the defendant did not offer to show that the plaintiff knew of the existence of these bonds ; and the evidence was rejected.

The defendant contended that this action was prematurely brought; that, by the true construction of the bond, the plaintiff was to have only such balance of her personal estate as would appear upon the settlement of the executor's account, or as would ordinarily be distributed to her next of kin in the case of intestacy ; and that such account should be rendered and allowed, ascertaining the balance, and a demand made for the same, before an action could be brought ; but the judge overruled the objection.

The defendant contended that the bond was void for uncertainty, since, as said Polly might expend and give away whatever she pleased, she might use up her entire estate, and leave no balance to come to the plaintiff; and also that the plaintiff's remedy, if any, was in equity ; but these objections were overruled.

A verdict was rendered for the plaintiff that the bond was forfeited, and the defendant alleged exceptions.

*E. Ames,* (*B. W. Harris* with him,) for the defendant. The plaintiff's bond and the bond in suit are to be construed together. *Hunt* v. *Frost,* 4 Cush. 54. *Cloyes* v. *Sweetser,* Ib. 403. Neither of the bonds stipulates for any demand or notice to be given by said Polly to the plaintiff, nor does the plaintiff's liability to forfeit his bond depend upon any demand, notice, refusal or neglect. The bonds offered by the defendant were evidence of a bar to the plaintiff's claim. The bond is void as against the policy of the law. *Boynton* v. *Hubbard,* 7 Mass. 112.

*J. J. Clarke,* (*P. Simmons* with him,) for the plaintiff, cited, in addition to cases cited in the opinion, *Fenton* v. *Emblers,* 3 Burr. 1278 ; *Trask* v. *Vinson,* 20 Pick. 105 , *Stearns* v. *Foote,* Ib. 432

*Pettee* v. *Case*, 2 Allen, 546; *Knight* v. *N. E. Worsted Co.* 2 Cush. 271.

BIGELOW, C. J. The only question raised at the trial of this case was, whether the plaintiff, on the evidence adduced by both parties, had sustained the allegation of a breach of the bond declared on, and was entitled to a judgment for the penalty under Gen. Sts. *c.* 133, § 9. The extent of the breach and the amount of damage to which the plaintiff might be entitled to recover therefor, were by agreement of parties reserved for future consideration. Upon a careful revision of the rulings under which the case was submitted to the jury, we are unable to find any valid ground of objection to any of them.

1. The bond contains no agreement which is against public policy. That it is competent for a party to stipulate for the disposition of his property at the time of his decease is too well settled to admit of doubt or question. The validity of such an agreement has been often recognized by this court. *Fitch* v. *Fitch*, 8 Pick. 480. *Trull* v. *Eastman*, 3 Met. 121. *Canada* v. *Canada*, 6 Cush. 15. Nor is it a material circumstance that the agreement contains a clause by which the defendant's testator was bound to give to the plaintiff, not only the property which she had in possession at the time of the execution of the bond, but also that which she might receive as heir or legatee of her mother. There might have been force in this objection, if it had appeared that the bond was given and the agreement made without the knowledge or assent of the mother. It might then have been deemed to have operated as a deceit on her, on the principle stated in *Boynton* v. *Hubbard*, 7 Mass. 112, 122. But it appears by the facts disclosed at the trial that the bond in suit was given in pursuance of a family arrangement or settlement to which the mother and daughter were both parties. An agreement by an heir apparent that he will convey an estate which may come to him by descent is valid, if entered into fairly, on an adequate consideration, with the knowledge and assent of the ancestor, and if the bargain is not unconscionable or obtained by oppression or by taking unjust advantage of the necessities of the heir. No element is shown to exist in this case

which in any degree tends to invalidate the contract. There was no deceit or fraud, actual or constructive, practised on the mother, nor would her property, under the stipulations in the bond, be disposed of at her decease in a manner of which she was ignorant, or contrary to her intention. The agreement, so far as it affected the rights and interest of the daughter, was in no respect unconscionable or unjust. It was a reasonable contract, made on an adequate consideration, with the free and voluntary assent of all parties interested.

2. There was no evidence of any neglect or failure by the plaintiff to fulfil the agreement into which he entered for the support of the obligor. Conceding that a breach of his contract would be a bar to the maintenance of this action — a point by no means clear — the facts disclosed at the trial would not have warranted the jury in finding such breach. No request was proved to have been made of the plaintiff to furnish support to the obligor after she ceased to reside in the same house with him, nor did it appear that after she withdrew therefrom up to the time of her decease, she intended or desired that the plaintiff should any longer be required to fulfil the stipulation for her support, contained in the bond which she held. For aught that appears, she voluntarily waived and abandoned all claims against the plaintiff, and elected to seek her support elsewhere and by other means. Indeed, the agreement into which she entered with Stetson, as shown by the bonds offered in evidence by the defendant, bearing date September 5th 1856, tends very strongly to show that it was her intention, without the knowledge or assent of the plaintiff, to avoid the obligation of the contract into which she had entered with him, and, by ceasing to receive support at his hands, to get rid of the performance of her part of this mutual obligation. Under such circumstances, a tender of performance by the plaintiff was unnecessary, and no inference of a failure or omission by the plaintiff to fulfil the agreement would have been warranted. So that if these bonds had been admitted in evidence, they would not have aided the defence, but would have tended to support the plaintiff's case.

3. The objection that the suit was prematurely brought is

untenable. There was clearly a breach of the bond declared on, by the act of the obligor in leaving a last will and testament duly executed, which was proved and allowed in the probate court, and by which the stipulation in the bond, to leave to the plaintiff all the personal estate of which she might die possessed, was broken. This was clearly a forfeiture of the bond, and gave the plaintiff an immediate right of action for the amount of the penalty.

4. Equally untenable is the objection that the bond is to be held void for uncertainty. The property which the plaintiff would have been entitled to receive, if the condition of the bond had been complied with, is susceptible of proof. But if it were not, the right to maintain the action would not be thereby affected. The plaintiff would be still entitled to judgment for the amount of the penalty. Any uncertainty as to the amount of property would affect only the damages for which execution is to issue.

5. It was suggested that the plaintiff's remedy was in equity only. But we can see no ground for this objection. An action at law is an appropriate remedy for a breach of a bond.

*Exceptions overruled.*