### In the Matter of Proving the Last Will and Testament of FRANCES E. PURDY, Deceased.

*(Surrogate's Court, Orange County, Filed January 27, 1892.)*

WILL—PROBATE.

> Two instruments, complete in form, upon a four page blank, were offered for probate. One disposed of money and specific articles, and the other of specific articles alone. They were drawn by testatrix, and were the same in all respects except as to the legacies, and were not dated. The subscribing witness testified that one was executed some months before the other, but she had only an impression as to which was executed first. It appeared that after one was executed testatrix received property from her sister which consisted wholly of household furniture. *Held,* that as the will bequeathing articles alone was not a complete disposition of testatrix's property, it must be deemed the last one executed and the clause of the revocation ignored under the circumstances, and that the will disposing of money should be admitted as the will of testatrix and the other as a codicil.

Proof of will.

B. R. Champion, for petitioner, a legatee, the executor being dead; C. W. Coleman, special guardian, for minor next of kin; J. B. Sweezy, special guardian, for minor legatees.

COLEMAN, S.—Frances E. Purdy died on the 13th day of October, 1891, a resident of the city of Middletown, in this county, having an estate of about $5,000, all personal property.

Two instruments, upon a four page sheet of paper, each instrument in form a complete will, are offered for probate as the will of the deceased.

Upon one page and its reverse is printed the usual blank form of a will, and upon the succeeding page and its reverse is another printed blank form of a will. The two leaves of the sheet have never been torn apart. The only portions of each printed form that are filled in are the large spaces following the printed words, "First, after all my lawful debts are paid and discharged, I give and bequeath," the blank left for the name of the exeuctor and the blank for the year. In the first of these spaces in each instrument is a list of legacies; in one seventeen legatees are named and five in the other, four of them occurring in both instruments. The same executor is named in both, and both bear date the ——— day of ———, 1891. Each instrument is a copy of the other except the portion containing the names of the legatees and description of the legacies. In the instrument naming seventeen legatees, there is a legacy of $500, two of $400, one of $300, several of $200, $150 and $100, amounting in all to the sum of $2,600. The remaining legacies are of specific articles, principally of household furniture. In the other the legacies are all of specific articles of household goods and are of articles not mentioned in the other. Both instruments have in the printed portion the usual clause revoking all former wills.

The subscribing witnesses are the same to both instruments, one of them being now dead. The surviving witness in both cases filled in the blanks left in that clause in the printed form. This witness testifies that one was executed several months before the other, but she is unable to tell which one was executed first; she thinks, however, that the one giving a gilt mirror was executed last, because she thinks the deceased did not have the mirror at the time the first instrument was executed. The instrument in which the gilt mirror is given is the one containing the gifts of money. The deceased and both witnesses were women well advanced in life, and there is no evidence that

either of them had any previous experience in such matters, or that either had any knowledge of the legal requirements for the preparation and execution of a will.

The subscribing witness testifies that the deceased, before the execution of the second instrument, said: "I have changed my will; I have added to it, and I want you to come and give me your signature again;" she also testifies that the testatrix said at the time of the execution of the last instrument, "this is another part of my will, an addition; I have some other things to will away."

The only provision in either instrument in the nature of a residuary clause is found in the one giving legacies of money, and occurs near the end of the written part, and after the gifts of money. It is as follows: "After all my debts are paid, the remainder of the money to be equally divided between the different *heirs mension* in the will of money." Then follow other legacies of specific articles.

The written portion of the other instrument, after the printed words "I give and bequeath," reads: "The following articles to my different nieces *mension* in this will;" then follow legacies of specific articles of household goods to five persons, and these legacies are the only provisions in this instrument relating to property.

It is laid down as settled law in Wms. on Exec., page 166: "If two inconsistent wills be found of the same date, or without any date, and no evidence can be adduced establishing the posteriority of the execution of either, both are necessarily void, and the deceased must be considered intestate. But in every case the courts will struggle to reconcile them if possible, and collect some consistent disposition from the whole."

The evidence of the surviving subscribing witness establishes beyond question that these two wills were not executed at the same time, but she only has an impression as to which was executed first. I am satisfied that the witness is wrong as to this fact. It is altogether more probable that the testatrix executed

first the instrument in which there is apparently a complete disposition of her estate; especially in view of the fact, which is conceded to be true, that the property received by her from her sister after the execution of the first instrument consisted largely of household furniture, and did not greatly augment her estate, and this is in harmony with the remark made by her at the time of executing the second instrument that she had some other things to will away. Parol evidence of these facts was admissible, as it related to an ambiguity upon the factum of the instruments. Wms. on Ex'rs, 353.

This being true, then it results, if full force is given to all the provisions of the second instrument, particularly of the clause revoking all former wills, that the first or principal will is revoked and the latter, which only makes a partial disposition of the estate, will be substituted in its place, thus leaving the deceased intestate as to the greater portion of her estate. A careful reading of the disposing portions of the two instruments and the remarks made by the testatrix at the time of the execution of the second, will, I think, show that such was not her purpose, but rather that one instrument was to supplement the other. This purpose, if possible within the provisions of the law, should be sustained.

Courts do not confine the testamentary disposition to a single instrument, but they will consider several, of different natures and forms and dates, as constituting together the will of the deceased. The form of an instrument is not controlling; it may be intended for a deed and yet operate as a will. And a subsequent will does not necessarily work a total revocation of a former one unless the latter expressly or in effect, by being inconsistent with it, revoke the former. These are well settled legal principles; I have, however, been unable to find a case in which an instrument containing an expressed revocation of former wills was held not to revoke such former wills.

It is a maxim that "no man can die with two testaments;" and Sir H. J. Fust in Plenty v. West, 1 Robert, 264, said that he knew of no case where a testator called a will "his last will,"

in which the court held former papers to be included. The authority of this case, at least to the extreme point to which the law is there carried, has been questioned. Wms. on Ex'rs, 163, note c.

It was held in Nelson v. McGiffert, 3 Barb. Ch. 158, that when a later will is inconsistent with a former will in some of its provisions merely, it is only a revocation *pro tanto*. See also Brant v. Willson, 8 Cowen, 56; Newcomb v. Webster, 113 N. Y. 191, 22 St. Rep. 955; and in Harwood v. Goodright, Cowp. 87, Lord Mansfield said: "If there is a complete second will, it cannot do otherwise than revoke a former will; but if it is only a variation or subtraction from a former will, it is in the nature of a codicil." The very meaning of the word codicil, as now used, is something annexed or added. Wms. on Ex'rs, 8.

In Thomas v. Evans, 2 East, 488, the testator made his will whereby a complete disposition of his property was made. Subsequently he acquired an interest in other real estate, and then made another will, which read: "This is the last will and testament of me," etc., etc., and therein devised his interest in his subsequently acquired real estate, and concluded the will with these words: "As to the rest of my real and personal estate, I intend to dispose of the same by a codicil to this my will hereafter to be made." The testator died without making the codicil. Held, "it is not enough to say that by making this will in terms large enough to include all his property, he must therefore have meant to revoke his former will, unless it be shown that he has made a disposition of this property inconsistent with it, * * * but even if this had imported an intention to revoke by making a different disposition in the future, it would not have amounted to a revocation." Both instruments were admitted to probate, as together constituting the will of the deceased. And in In the Goods of Astor, L. R., 1 P. Div. 150, a late case in England, where an American had, by a will and codicils, disposed of his property generally, and by a second will, in which he named separate executors, had disposed

of moneys invested in the British funds, the second will was admitted to probate as part of the testator's will. See also *Ex parte* Lord Ilchester, 7 Ves. 372.

There must always be an intention to revoke. Acts which of themselves would ordinarily indicate an intention to revoke may be proved not to have been so intended; as when a testator set about to destroy his will, and had actually partly torn it, but was persuaded from completing the destruction of the instrument; or having two wills, the testator unintentionally destroyed the wrong one, or the will was accidentally destroyed. So, also, conversely, where by a statute a previously made will is revoked by certain acts of a testator, as in the case of a single woman who, having made her will, subsequently marries, a publication of a codicil to the will subsequent to the marriage republishes and establishes the will. Brown v. Clark, 77 N. Y. 369.

The cases cited, while not directly in point, however, do show the purpose of the courts to ascertain and as far as possible to carry out the intentions of testators. There probably has not arisen in the courts a case similar to the one now presented and could not very well have arisen until the present day of printed blank forms of wills. It is quite probable that Miss Purdy, having procured the blank form, in her inexperience gave very little attention to the printed portion of it, but confined her attention, rather, to what was necessary to be written to show her wishes in regard to the disposition of her property, supposing, as she might reasonably do, that if this was plainly stated the rest was unimportant. And it is in this view of the case that I have concluded that it is proper to ignore that part of the second instrument in which it is stated that all former wills are revoked, also having in mind the familiar legal principle that where words of a particular legal meaning are used by an unskilled person, in a different or even opposite sense from that ordinarily given them, that meaning and effect will be given them by the court which it is evident they were intended to have.

The instrument in which legacies of money are given will, therefore, be admitted as the will of the deceased, and the other as a codicil thereto.