Submitted on briefs without argument May 6, decided May 20, 1913.

## KELLEY v. DEVIN.*

(132 Pac. 535.)

**Wills—Agreements to Bequeath—Validity.**

1. It is competent for the owner of property to make a contract with another person to bequeath such property to such person at the death of the owner.

**Wills—Agreements to Bequeath—Remedies for Breach.**

2. Where an agreement to bequeath and devise property is violated by the execution of a will in conflict therewith, equity, although it cannot grant specific performance or quiet the title of the party complaining of the breach, can impress a trust on the property in the hands of the executor and protect the rights of such party where he has substantially complied with the contract, especially where the property is intact and in the possession of the executor.

**Wills—Actions on Contract to Bequeath—Sufficiency of Evidence.**

3. In an action by a son against his father's executor on a contract by the father to devise and bequeath property if the son would

*The question of the validity of an agreement for bequest or devise is treated in a note in 14 L. R. A. 860.

As to the right to recover value of services rendered in consideration of contract to convey or devise property which is void by the statute of frauds, see note in 37 L. R. A. (N. S.) 639.—REPORTER.

remain at home and assist in managing the father's business, evidence *held* to show performance of the contract by the son.

**Wills—Contract to Bequeath—Rescission.**

4. If a contract by which a father agreed to devise and bequeath property to a son, if the son would remain at home and assist in managing the father's business, was broken by the son, the father could not disinherit him, but if he had grounds therefor, was bound to rescind the contract and give notice thereof to the son, and if he failed to do so the son's lack or inadequacy of performance was waived and could not be urged by the father's devisees as a ground for rescinding the contract.

**Specific Performance—Part Performance of Oral Contracts.**

5. Where a son, pursuant to his father's oral agreement to bequeath and devise property if he would remain at home and assist in managing the father's business, for ten years rendered such services as manifestly were not to be compensated by a mere stipend, equity would enforce the oral agreement, the son having no other remedy, as there was no express contract to pay the reasonable value or a specific sum for the services, and there could be no recovery on *quantum meruit* because of the relationship.

> [As to agreements to make particular dispositions of property by will, and the mode of enforcing them, see note in 66 Am. Dec. 784.]

From Morrow: DAVID R. PARKER, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit by Bruce B. Kelley against S. P. Devin, surviving executor of the last will and testament of Norman A. Kelley, deceased, Delia E. Southworth, J. Griggs Kelley and Laura Weir, to enforce the specific performance of a contract. The facts are as follows:

Norman A. Kelley died in Morrow County, Oregon, May 28, 1908, leaving surviving him Emily A. Kelley, his widow, and the plaintiff, their only child. In substance, the complaint states that about April 23, 1898, Norman A. Kelley was the owner of considerable land and personal property; that up to that time the plaintiff had been working out part of the time and remaining at home with his father during the remainder, and about then he informed his father that he intended to go into Malheur County and there engage in busi-

ness for himself; that thereupon the father proposed
to the son "that if he (the plaintiff) would remain at
home until the death of said Norman A. Kelley and
assist in managing and running the farm and sheep
and cattle that he would make him (the plaintiff) a
partner in said business, and that upon the death of
said deceased he would leave, will, bequeath, and de-
vise unto the plaintiff an undivided half of all the
property, both real and personal, of every kind and
nature that might then belong to said deceased."
The plaintiff alleges, in effect, that he then and there
accepted the proposition and agreed to and with his
father that he would comply with the conditions of
the proposition, and went into possession of the
property then on hand and remained with the de-
ceased until his death above mentioned and gener-
ally performed all the conditions to be performed by
the plaintiff. During the ten years mentioned imme-
diately prior to his death, the father accumulated
more property both in land and in personalty. It
is then charged that on March 28, 1908, the deceased
disregarded the contract mentioned and, in violation
thereof and in an attempt to defraud the plaintiff,
neglected to make the will as provided, and on the
contrary made a will in which, after bequeathing
the plaintiff the sum of $50, he gave the whole prop-
erty to two trustees, S. P. Devin and J. M. Hager,
directing in general that his debts and plaintiff's
legacy be paid; that out of the proceeds of sale
of the personal property and the rents of the real
property his widow should be comfortably supported;
that after her death the whole property be sold by the
trustees; and that, after paying three brothers five
dollars each, the remainder was to be divided between
a fourth brother and two sisters in equal shares.
Hager died leaving S. P. Devin as sole trustee and
executor of this will. The executors, the widow, and

all the legatees under the will were made parties defendant, and the plaintiff prayed that the contract between him and his father be specifically performed and the plaintiff be decreed to be the owner of an undivided half interest in and to all the real and personal property of which the father died seised and for general relief. The ownership of the property by the decedent at the time of his death, his relationship to the plaintiff and to the widow are admitted, as well as the making of the will quoted in the complaint; but the alleged contract between the father and son is expressly denied by the answer of the trustees, executors, and the residuary legatees, who alone appeared in the defense. The answering defendants also allege: "That, during the entire period between the date of the alleged contract set forth in plaintiff's complaint and the decease of Norman A. Kelley, plaintiff spent all of his time, save a very small portion thereof, away from the place and business of said Norman A. Kelley and in idleness; that during such period the plaintiff never performed any, only a small amount, of labor for said Norman A. Kelley or in connection with his business; and that for such small amount of labor, and for any property ever furnished by plaintiff to said Norman A. Kelley or his business, plaintiff exacted from said Norman A. Kelley full and complete payment, satisfaction, and reimbursement, and that the said Norman A. Kelley fully paid, satisfied, and reimbursed plaintiff for the same." The new matter in the answer was traversed by the reply. The Circuit Court heard the case on the testimony reported by a referee and entered a decree dismissing the suit, with costs, from which the plaintiff appeals.

REVERSED: DECREE RENDERED.

Submitted on briefs without argument under the proviso of Rule 18 of the Supreme Court: 56 Or. 622 (117 Pac. xi).

For appellant there was a brief over the name of *Mr. Sam E. Van Vactor.*

For respondents there was a brief over the names of *Mr. Clinton E. Woodson* and *Mr. J. J. Southworth.*

Mr. Justice Burnett delivered the opinion of the court.

1. It is well established that it is competent for the owner of property to make a contract with another person to bequeath the same to that person at the death of the owner. This doctrine is recognized in this state in the cases of *Rose* v. *Oliver,* 32 Or. 447 (52 Pac. 176), and *Richardson* v. *Orth,* 40 Or. 252 (66 Pac. 925, 69 Pac. 455). In the first of these cases the alleged contract was denied enforcement because the proof failed to show that there was any binding agreement on the part of the claimant to correspond with the alleged agreement of the testator. In the latter case evidence was held insufficient to prove the allegations. In *Hawkins* v. *Doe,* 60 Or. 437 (119 Pac. 754), there were many circumstances much like those attendant in this case. The suit, however, was to compel the specific performance of an agreement to convey land which the owner failed to carry out in his lifetime. The proof, if anything, showed an intention of the owner to retain control of his property during his lifetime and to devise it by will. Besides, this being a failure of proof, the court in its discretion remitted the plaintiff to his remedy at law, especially as the land had been sold at administrator's sale prior to the decree and the purchaser was not before the court. *Brown* v. *Lord,* 7 Or. 302, cited by the defendant here, was a

suit to compel specific performance of an agreement said to have been made by a father, then deceased, to convey land to his son. That suit failed because the land was uncertain in description or identity and because there was no marked change of possession of the land. In other words, the subject matter, the performance and terms of the contract, were all uncertain. In this case the testimony of the plaintiff and his mother and of some three other disinterested witnesses clearly prove the making of the agreement at the time as alleged in the complaint.

2. This is not a suit to quiet title, nor yet strictly a suit to enforce specific performance. The plaintiff has no legal title to quiet, and the person who should have performed the contract to make a will is dead and cannot perform. In such cases equity will impress the property in question with a trust in the hands of executor under the will made in violation of the agreement and protect the rights of a party who has shown substantial compliance with the contract, especially where the property is yet intact and in possession of the trustee. Other cases showing that it is competent to make such a contract are *Johnson* v. *Hubbell,* 10 N. J. Eq. 332 (66 Am. Dec. 773); *Brown* v. *Sutton,* 129 U. S. 238 (32 L. Ed. 664, 9 Sup. Ct. Rep. 273); *Teske* v. *Dittenberner,* 70 Neb. 544 (98 N. W. 57, 113 Am. St. Rep. 802); *Banks* v. *Howard,* 117 Ga. 94 (43 S. E. 438); *Whiton* v. *Whiton,* 76 Ill. App. 553; *Jenkins* v. *Stetson,* 91 Mass. (9 Allen) 128.

3. There is no testimony to dispute that showing that the contract was originally made about ten years prior to the death of the father. The only attack made by the defendants upon the position of the plaintiff is that he only spent a part of his time at the farm and in the management of the business of his father, and that he only performed a small amount of labor,

for which the father paid him in full. This testimony in support of the allegation of the answer comes principally from the transient employees who worked at the place and testified that the plaintiff was away from the farm considerable of the time and sometimes slept late in the morning. On the other hand, the mother and several disinterested witnesses testify that the plaintiff worked on the farm and in the management of the place the same as the father, and we think the preponderance of the testimony is sufficient to sustain the allegation of performance on the part of the plaintiff. Besides this, it is manifest that the father at the time the agreement was made was anxious to keep the son with him. He was an only child, and the father stated at the time both to the son and to his mother that there were only three of them, and that there was enough property for all of them. Evidently the design was to keep the son from going into a far country. No set or particular services, such as would be ordinarily demanded from an ordinary employee, were required or specified in the agreement. They were manifestly services which could not, and were not, intended to be measured by any mere pecuniary standard. At the time the son was about 26 years of age and had accumulated considerable property of his own in horses and had a homestead; his father was owing him, according to the undisputed testimony, something like $2,000. The father at the time surrendered to the son a key to the former's box in the bank and gave him access to his private papers. Within a few months prior to his death the father told a banker of Heppner that he had made his son a full partner and had agreed to will him one-half of his property.

4. It is true there are declarations made to other parties that he intended to disinherit the son, but if he had made the contract as stated, and as we think the

preponderance of the evidence proves, he had no right to disinherit him. If the son had violated the contract and so had furnished ground for a rescission of the same, it was the duty of the father to exercise his right of rescission and to give notice of the same to the other contracting party. This he did not do, and, so far as lack of performance or inadequacy of performance on the part of the son, the father must be held to have waived the same, within the meaning of *Burns* v. *Smith,* 21 Mont. 251 (53 Pac. 742, 69 Am. St. Rep. 653), and *Burdine* v. *Burdine,* 98 Va. 515 (36 S. E. 992, 81 Am. St. Rep. 741). It will avail nothing to those who have expended no money in the property and who are mere gratuitous devisees of the same to now urge, which the testator did not do, that the plaintiff had inadequately performed his agreement. It was true that money passed between the father and son, and this is largely explained by the son in stating that some of it was given for his expenses and some for a surgical operation upon himself for appendicitis and other expenses, largely in connection with the business. The agreement was made. It was a natural agreement in the nature of a family settlement, and it should be carried out by the courts, if possible, because such arrangements are favored in equity. It is in testimony that during the latter years of his life the father drank very heavily and grew morose, as is often attendant on those who indulge in prolonged inebriety, and he may have even had cause to rescind the contract, but there is no testimony that he did rescind it in any way, but only that he violated it by making the will contrary to the terms of the agreement. The answering defendants have no rights on their own behalf to rescind the contract for him, and it must stand and be executed.

5. Otherwise the plaintiff cannot recover any compensation for ten years of his life passed in the service

of his father, which he otherwise would have spent in his own behalf. He had no contract with his father to pay him a specific sum of money for his services or what they were reasonably worth. These were services performed by a near relative, namely, by a son, for the father, and without an express contract he could not recover for them within the meaning of *Wilkes* v. *Cornelius,* 21 Or. 348 (28 Pac. 135), and other like authorities. This feature distinguishes this case from *Farrin* v. *Mathews,* 62 Or. 517 (124 Pac. 675, 41 L. R. A. (N. S.) 184), where it was held that the mere performance of services in consideration of an agreement to convey without taking possession of the land was not sufficient to take the case out of the statute, and the claimants were remitted to their remedy at law. A like result was reached in *Hawkins* v. *Doe,* 60 Or. 437 (119 Pac. 754), where no such near relationship operated to prevent the persons rendering the services from recovering on the *quantum meruit* as against the estate of the decedent. Here, within the meaning of *Wilkes* v. *Cornelius, supra,* one near relative had served another for ten years. Moreover, they were such services as were manifestly not to be compensated as by a mere stipend but otherwise, as provided in the contract. It would therefore be inequitable not to support the contract which was clearly proven and which was never rescinded but only violated by the decedent.

The decree of the Circuit Court is reversed and one here entered according to the prayer of the complaint.

REVERSED: DECREE RENDERED.