Submitted on briefs September 16, reversed and decree entered October 7, former opinion modified on petition for rehearing December 2, 1924.

# BESSIE BOYNTON POPEJOY *v.* E. L. BOYNTON

## ET AL.

### (229 Pac. 370; 230 Pac. 1016.)

**Wills—Evidence Held to Prove Agreement to Leave Estate to Plaintiff in Consideration of Home.**

1. Evidence *held* to establish agreement of defendants' intestate and ancestor to leave estate to plaintiff in consideration of home and maintenance during remainder of lifetime.

**Wills—Agreement to Devise All Property Owned at Time of Death Held Sufficiently Certain for Enforcement.**

2. Agreement of defendants' intestate and ancestor to leave all her property to plaintiff on her death *held* enforceable, as against contention that there was no sufficient description of the property.

**Wills—Description, Which can be Made Certain, is Certain.**

3. With respect to sufficiency of description in agreement to give property by will, that is certain which can be made certain.

**Wills—One can Make Binding Agreement to Devise Real Property.**

4. One can make binding agreement to devise real property.

**Equity—Highest Function is to Seek Remedy for Each Wrong.**

5. The highest function of equity is to seek out a remedy for each wrong.

**Wills—Property in Hands of Administrators and Heirs at Law Held Impressed With Trust.**

6. Where plaintiff had performed her part of agreement to furnish decedent a home in consideration of decedent's agreement to

---

4. Validity of agreement for bequest or devise, see note in 14 L. R. A. 860. See, also, 28 R. C. L. 64.

Specific performance of contract to make will, see notes in **Ann. Cas.** 1914A, 399; Ann. Cas. 1918A, 1191. See, also, 28 R. C. L. 66.

leave her property to plaintiff on her death, equity will impress the property in hands of administrator and heirs at law with a trust in favor of plaintiff.

## ON PETITION FOR REHEARING.

**Estoppel—Allegation in Complaint on Contract to Will Held not to Estop Plaintiff to Show She Supported Intestate.**

7. Plaintiff, suing on agreement of defendant's intestate to will property to her, was not estopped to show she supported intestate in her home as agreed, by allegation that administrator appointed in another county, was "duly appointed," where complaint as a whole showed intestate lived with plaintiff.

**Wills—Right to Recover on Agreement to Will Unaffected by County of Decedent's Domicile.**

8. Relative to right of plaintiff to recover because of decedent's agreement to leave her property to plaintiff on her death, in consideration of plaintiff's agreement, fully performed, to furnish her a home for the rest of her life, it is immaterial in which of two counties was decedent's legal residence, domicile or inhabitancy.

**Domicile—Not Always Where Most Time Spent—"Inhabitancy"— "Inhabitant"—"Residence."**

9. One may be a technical resident or inhabitant of one county and have prolonged absence therefrom, and spend most of the time in another county; "residence," "inhabitancy," and "inhabitant" being relative terms, depending on particular circumstances, and not infrequently on intention.

**Wills—Right Under Contract to Will, Subject to Debts and Administration.**

10. Right of plaintiff to whom, for a consideration of support, deceased agreed to leave her property on her death, is subject to payment of any debts of deceased, and to right of administrator to deal with the property for such purpose.

**Executors and Administrators—Wills—Right to Costs in Suit Based on Agreement to Will Stated.**

11. Successful plaintiff claiming right to decedent's property under agreement to will is entitled to proportion of costs against defendants other than the administrator, but he is entitled to have his expenses in defending paid from the estate.

---

9. Domicile and synonymous terms, see notes in 48 **Am. St. Rep.** 711; **Ann. Cas.** 1915C, 778, 780, 783; **Ann. Cas.** 1917B, 726. See, also, 9 **R. C. L.** 539, 540.

Meaning of term "place of abode," see note in **Ann. Cas.** 1912C, 282.

See 21 **C. J.**, p. 1066; 24 **C. J.**, pp. 913, 917; 29 **C. J.**, p. 200 (1926 Anno.); 31 **C. J.**, p. 1194 (1926 Anno.); 34 **Cyc.**, pp. 1647, 1656, 1657; 40 **Cyc.**, pp. 1067 (1926 Anno.), 1070, 1073 (1926 Anno.).

See 21 **C. J.**, p. 198; 31 **C. J.**, p. 235; 36 **Cyc.**, p. 736; 40 **Cyc.**, pp. 1063, 1064, 1070, 1072.

From Marion: GEORGE G. BINGHAM, Judge.

In Banc.

This is a suit brought by the plaintiff to declare plaintiff the owner in fee simple of, and to impress in favor of plaintiff and against defendants a trust upon, certain real and personal property described in the complaint. The complaint alleges, in substance: That one Lida Boynton died in Multnomah County about October 14, 1921; that by an order of the probate court, bearing date of March 24, 1922, defendant Charles L. Ogle was appointed administrator of her estate; that he qualified in such capacity and is now the duly appointed, qualified and acting administrator; that the other defendants, A. L. Boynton and Charles T. Boynton, are brothers and heirs at law of Lida Boynton, and the plaintiff is a sister of these two defendants and also an heir at law; that about the twentieth day of October, 1917, plaintiff was a resident of Multnomah County, Oregon, and decedent, Lida Boynton, was a resident of Woodburn, Marion County, Oregon; that Lida Boynton had for some time been residing with her mother in Woodburn, Oregon; that her mother had died and left her without companionship and removed from her immediate relatives, with no one to care for her or assist her in the care of her home or render her any enjoyment and companionship during her declining years; that, realizing the above matters, the decedent undertook, promised, covenanted and agreed with plaintiff that she would make, execute, publish and declare a valid last will and testament, wherein and whereby she would devise and bequeath to plaintiff any and all real or personal property which she might own at the time of her death, and that at the time of her death she would leave said last will and testament, devising and bequeathing to plaintiff all

of her property; that said last will and testament was to be executed by decedent in consideration that plaintiff would furnish the decedent a home during the remainder of decedent's life, that is, would allow decedent to come to the home of plaintiff and remain therein during the remainder of decedent's lifetime, and be considered and accepted as a member of plaintiff's family, and enjoy the comforts of said home and the companionship and association of plaintiff; that, as part of the agreement above mentioned, decedent was to be furnished, during the remainder of her lifetime, by plaintiff, lodging, board and all laundry work required by decedent while she lived in said home; that said agreement was acquiesced in by plaintiff, and for the consideration above named plaintiff agreed to furnish decedent a home with her in Portland, as well as the conveniences and accommodations above mentioned, and to permit decedent to enjoy the association and companionship of plaintiff during the lifetime of decedent; that all of the covenants and provisions of said agreement were observed by plaintiff during the period of time above stated, and plaintiff fully kept and performed each and every provision of said contract to be kept and performed by her; that the character of the services to be rendered under the above-mentioned contract, which were rendered by plaintiff to decedent, were of inestimable value and consisted principally of personal care and attention, society and companionship, and the same were not measurable by monetary consideration. It is then alleged that Lida Boynton did attempt to make a valid last will and testament, devising and bequeathing all of her real and personal property to plaintiff, but through inadvertence, oversight and misunderstanding in the execution of the necessary instrument she failed to make, execute,

publish and declare a valid last will and testament; that the said Lida Boynton at no time executed such an instrument as she agreed to execute, and by reason of the failure upon her part so to do plaintiff has been prevented from receiving the property of decedent in accordance with their understanding and agreement. A prayer follows, asking that plaintiff be declared to be the owner in fee simple of the real property described in the complaint, and the absolute owner of the personal property specifically described, and that defendants be decreed to hold said property in trust for plaintiff, and for general equitable relief.

Defendants answered, admitting that Lida Boynton died in Multnomah County at the date specified; that Charles Ogle was appointed administrator of her estate; that E. L. Boynton, Charles T. Boynton and plaintiff are brothers and sister, respectively, of the decedent and her heirs at law, and that Lida Boynton was the owner in fee simple of the property described in the complaint. Every other allegation contained in the complaint was denied by defendants.

On the thirtieth day of December, 1922, the cause came on for hearing upon its merits before the Circuit Court of Marion County, and later, on January 6, 1923, the court entered findings and a decree for the defendants, and dismissed plaintiff's suit with costs; from which decree plaintiff appeals.

REVERSED AND DECREE ENTERED.

For appellant there was a brief over the names of *Messrs. Smith & Shields* and *Mr. Virgil H. Massey.*

For respondents there was a brief over the name of *Mr. H. Overton.*

McBRIDE, C. J.—It is clearly proven, in our opinion, that the contract was made substantially as alleged in the complaint. The plaintiff in her testimony seemed somewhat confused as to whether the agreement was that the property should be deeded or willed to her, and seems to have used the terms interchangeably, and also stated that decedent had agreed to give it to her, but the whole tenor of her testimony indicates that while she was not clear in her distinction as to terms, and while the decedent was probably equally ignorant in these matters, the substance of the promise was that the title to the property should continue in decedent until her death, and that she would make such provision as would insure the passing of the title to the plaintiff. Such was no doubt the intention of the decedent, as is clearly evidenced by the fact that a short time prior to her death the deceased wrote and signed with her own hand two instruments, one purporting to be a will, giving to plaintiff her personal effects, to wit, certain oil stock, and the second one, bearing the same date, purporting to devise her real property; from which it appears that she, also, was somewhat confused as to the exact difference between a will and a deed. But, so far as the intent was concerned, the instruments themselves indicate that she intended to make, and thought she was making a will, or wills, to all of her property. The two instruments are as follows:

"Portland, Or., June 30, 1921.
"These ten (10) shares of stock in the Bankers and Merchants Oil Company of Fort Worth, Texas, I will to my sister Bessie Boynton Popejoy.
"MISS LIDA BOYNTON."
"Portland, Or., June 30, 1921.
"This is to certify that on this 30th day of June, A. D. 1921, I make my sister Mrs. Bessie Boynton

Popejoy my only legal and lawful heir. All of my property, including the deed to my home in Woodburn, Marion County, Oregon, also a deed to lots #26 & #27, in Block #126, University Park, Portland, Or. My oil stock in the National Producing and Refining Co., of Fort Worth, Texas, amounting to (300) three hundred shares, also (200) two hundred shares in the Bankers & Merhcants Oil Co., of Fort Worth, Tex. And $500, five hundred dollars, invested in the National Securities Co., with offices in the Spalding Building, Portland, Or.

"Miss Lida Boynton.
"My Last Will and Testament."

1. That it was her intention, at her death, that Mrs. Popejoy should succeed to all of her property, and that she fully believed that she had accomplished this design is so clearly proven by the uncontradicted testimony of the plaintiff and her husband, and corroborated by the testimony of disinterested witnesses, that it can scarcely admit of a reasonable doubt. That for more than four years decedent lived in the home of plaintiff and her husband, and was furnished, free of charge, with board, washing, clothing and other small and necessary expenditures incurred in her behalf, is also very thoroughly established, indicating that plaintiff conscientiously performed her part of the agreement. In fact, this is not substantially questioned or contradicted. The only serious attack made upon this suit of plaintiff's is the fact that she presented a large bill to the probate court for all of these services, which appears to have been rejected, but she explains this by saying that her then attorney advised her that this was the only way in which she could get what she was entitled to, and we are disposed to accept that as the true explanation. In short, we are satisfied that it was the intention of the parties that Lida Boynton

was to leave to her sister the real and personal property mentioned in the complaint, and that such intention was the result of an agreement to that effect, made as hereinbefore stated.

2, 3. It is claimed that there is no sufficient description of the property, but that is certain which can be made certain, and there can be no doubt as to what property was intended, because it was to comprise all of the property that the decedent should have at the time of her death.

4. There is no doubt but that it is competent to make a binding agreement to devise real property: *Rose* v. *Oliver,* 32 Or. 447 (52 Pac. 176); *Richardson* v. *Orth,* 40 Or. 252 (66 Pac. 925, 69 Pac. 455); *Kelley* v. *Devin,* 65 Or. 211 (132 Pac. 535); *Stevens* v. *Myers,* 91 Or. 114 (177 Pac. 37, 2 A. L. R. 1155). There is a diversity of authority as to the remedy for a breach of such contract. In some cases it is held that under proper conditions an action in *quantum meruit* for the value of such services will lie: *Hawkins* v. *Doe,* 60 Or. 437 (119 Pac. 754, Ann. Cas. 1914A, 765); *Martin* v. *Wright's Admrs.,* 13 Wend. 460 (28 Am. Dec. 468). See, also, authorities cited in note 2, *Johnson* v. *Hubbell,* 10 N. J. Eq. 332, as re-reported in 66 Am. Dec. 773. But where, as in this case, the services to be rendered were not such as could be computed in money, and where there was no intention on the part of either party that they should be so computed, the rule is different.

The consideration here, as stated in the complaint, is "that the plaintiff would·furnish the decedent a home during the remainder of the life of decedent; that is, would allow decedent to come to the home of the plaintiff in Portland, Oregon, and to remain therein during the remainder of decedent's lifetime, and to be considered and accepted as. a member

of the family of plaintiff and to enjoy the com-
forts of the said home and the companionship and
association of plaintiff.'' In addition to this, dece-
dent was to be furnished by plaintiff, during the
remainder of her lifetime, lodging and board in the
home of plaintiff and all laundry work required by
decedent while she lived in said home. Perhaps the
board, lodging and laundry work could be computed
in money, but the comfort of a home with her sister
and the privilege of associating with one of her own
flesh and blood were not capable of being estimated in
money. Indeed, under the strict rule announced in
*Wilkes* v. *Cornelius,* 21 Or. 348 (28 Pac. 135), it is
doubtful whether plaintiff could have recovered for
the board, laundry work and lodging. The probate
court evidently took this view of it when it rejected
her claim for these services.

5, 6. The facts shown here bring the case within the
rule announced by Mr. Justice BURNETT in *Kelley* v.
*Devin, supra,* which, in substance, is that in cases of
this character equity will impress the property in the
hands of the administrator or heirs at law with a
trust in favor of the party who has completely per-
formed the agreement and compel a conveyance in ac-
cordance with such agreement. There is a somewhat
subtle distinction made in the authorities between such
a remedy and the remedy involved in a suit for
specific performance which arises from the fact that
there can be no specific performance adjudged to
compel a party to make a will; that instrument being
ambulatory and always subject to revocation. The
contract is one which can only take effect upon the
death of the promisor. But equity, whose highest
function is to seek out a remedy for every wrong,
and to enforce the spirit rather than the letter of
such a contract, will not permit one who has com-

pletely performed his agreement, both in letter and spirit, to be turned away remediless while the consideration—the very *corpus* of the agreement—is still within its reach. Hence the doctrine which holds that the heirs are trustees of the legal title for the benefit of the promisee. In addition to the authorities cited in *Kelley* v. *Devin, supra,* attention is called to the exhaustive note to *Johnson* v. *Hubbell,* as re-reported in 66 Am. Dec. 773, which indicates that the authorities are practically unanimous.

Under these circumstances, we are compelled to differ with the learned judge of the court below, and to reverse the decree here and enter a decree finding that the defendants hold the title to the property described in the complaint in trust for the plaintiff; and requiring them to deliver the personal property described in the complaint, and to make a conveyance to plaintiff of the real property described in the complaint; and in default of so doing that this decree stand for such conveyance of the real property; and that plaintiff herein recover her costs and disbursements in the Circuit Court and in this court.

REVERSED AND DECREE ENTERED.

---

Former opinion modified December 2, 1924.

ON PETITION FOR REHEARING.

(230 Pac. 1016.)

For the petition, *Mr. H. Overton* and *Messrs. Carson & Carson.*

No appearance *contra.*

McBRIDE, C. J.—7–9. In an ingenious petition for rehearing respondents contend, in substance, that appellant, having alleged in her complaint:

"That Lida Boynton died in Multnomah County, Oregon, on or about the 14th day of October, 1921, and by an order of the County Court of Marion County, Oregon, bearing date of March 24th, 1922, Charles L. Ogle was duly appointed administrator of said estate, and said party has qualified in said capacity, and ever since said appointment has been and now is the duly appointed, qualified and acting administrator of said estate,"

is estopped as a matter of law from showing the fact, which is made so clear from the testimony as to be beyond question, that decedent actually lived in the home of appellant in Multnomah County for a period of about four years and died there. Respondents' theory is that, by alleging that Ogle was "duly appointed administrator of said estate," appellant has, in effect, alleged the legal conclusion that deceased was at the time of her death an inhabitant of Marion County, and that, while in fact the decedent was domiciled with appellant in Multnomah County at the time of her death and for nearly four years prior thereto, the order of the County Court of Marion County appointing Ogle administrator is a bar to her assertion of such fact in this proceeding. It will be seen by the statement of the issues in the opinion heretofore rendered (*Boynton* v. *Popejoy,* [229 Pac. 370]), that the matter above quoted does not stand alone, but must be taken in connection with other matters stated in the complaint, which recite the fact of decedent's domicile with appellant with great particularity. So far as appellant's right to recover is concerned, it is not material whether decedent's legal residence, domicile or inhabitancy was in Multnomah County or in Marion County. As a matter of law decedent might have been a technical resident or inhabitant of Marion County and on account of her employment have spent the

greater portion of her time elsewhere. Both residence and inhabitancy are relative terms, depending upon the particular circumstances, and not infrequently upon intention: *In re Colebrook*, 26 Misc. Rep. 139 (55 N. Y. Supp. 861); *Sears* v. *City of Boston*, 1 Met. (Mass.) 250; *Holmes* v. *O. & C. Ry. Co.*, 5 Fed. 523.

A study of the cases cited in "Words and Phrases," under this title, indicates that the word "inhabitant" has various meanings not inconsistent sometimes with prolonged absence from a particular locality. The deceased had a house in Woodburn, in Marion County, paid her taxes there, had an attorney there, and, for the purposes of administration, the legal conclusion might fairly have been drawn that she was at the moment of her death an inhabitant of Marion County. But appellant stated her whole case in the complaint and there was no demurrer or motion to strike, and the objection is founded upon an ingenious play upon words rather than upon a matter of substance.

10. Our opinion goes too far in decreeing to appellant the absolute return of the real and personal property. The administrator has answered jointly with the other defendants and has made no allegations or showing that either the real or personal property is necessary for the purposes of administration, or that there are any debts of any kind against the estate. Assuming, however, that there may be such, the decree should be so modified as to subject the property to the payment of debts of deceased and to the right of the administrator to deal with it for such purpose, if necessary.

11. As to plaintiff's costs and disbursements here, it would be unfair to the administrator to require him to pay them from his own pocket, and as to him such costs as have been incurred by him should be paid

112 Or.—42

by the estate; but costs and disbursements incurred by the other respondents should be borne by them. It is a hard matter to apportion these, but as an equitable adjustment, we will decree that appellant recover from the other two respondents two thirds of her taxable costs and disbursements here and in the lower court, leaving the administrator to apply to the County Court in probate for such expenses as he has necessarily incurred in defending the property of the estate, which is evidently a small sum.

FORMER OPINION MODIFIED ON PETITION FOR REHEARING.