Argued February 1, affirmed April 2, 1929.

IN THE MATTER OF THE ESTATE OF EDMUND M. ENGLE, DECEASED.  AUGUSTA JACKSON, ET AL. *v.* LAURA B. PITTENGER ET AL.

(276 Pac. 270.)

For appellants there was a brief over the name of *Mr. Emerson U. Sims,* with an oral argument by *Mr. W. O. Sims.*

For respondents there was a brief over the name of *Mr. H. Overton,* with an oral argument by *Mr. Walter C. Winslow.*

BEAN, J.—Edmund M. Engle, died at Woodburn, Oregon, December 17, 1925. Thereafter a certain

will dated February 19, 1921, was probated in common form in the County Court of Marion County, Oregon, as the last will and testament of said Edmund M. Engle. It is alleged by contestants that the instrument was not the will of Edmund M. Engle; that said instrument was signed by him under protest, merely to keep peace with Laura B. Pittenger with whom said Edmund M. Engle was making his home. That another will was duly executed in regular form by Edmund M. Engle, in the presence of three witnesses in August, 1921, which revoked and annulled all testamentary documents executed by said Engle prior to that time.

It is shown by the testimony that some time in the year 1914 Edmund M. Engle, the decedent being without a family and desiring a home for the remainder of his lifetime, entered into an agreement with Laura B. Pittenger, one of respondents, by the terms of which it was agreed that said Laura B. Pittenger should furnish to decedent, during the remainder of his lifetime, a suitable home and permit the said decedent to live in her home, in consideration of which decedent promised the said Laura B. Pittenger a farm of 163 acres, referred to in the record, and also promised to leave a will devising said farm to Mrs. Pittenger.

Pursuant to this contract, decedent made his home with Mrs. Pittenger during the remainder of his life at Woodburn, Oregon, for about eleven years, and Mrs. Pittenger carried out her contract in full with Engle, the decedent, and furnished him a home, cared for him much the same as a daughter, and nursed him when he was ill. At the time of his death Engle was eighty-three or eighty-four years of age. Just before his death he turned over to Laura B. Pittenger

keys to a lock-box and in this lock-box were found two documents, the will and an instrument in the form of a deed, which were probated in these proceedings. By the terms of the will Laura B. Pittenger was devised the farm, in accordance with the terms of her contract with decedent.

On the seventh day of April, 1921, decedent executed an instrument in the form of a deed of the farm mentioned, which appears to be testamentary in character by virtue of the proposition therein, that it should not be delivered until decedent's death. This deed described the farm and recites that the consideration therefor is "One dollar and her proffered care, assistance and attention until my death." The deed further recites:

"This deed is made with these stipulations, reservations, and agreements; that the deed is not to be delivered to the said Laura B. Pittenger, the grantee herein named, nor recorded in the records of deeds for Marion County, Oregon, until all the proffered assistance, care and attention, have been performed for me until my death by the said Laura B. Pittenger; and the said deed is to remain in my possession and control and retaining the right to revoke, annul, or cancel the said deed at any time I may desire to do so before my death; and after my death, if the property herein described has not been sold or otherwise disposed of by me, this deed is intended to be in full force and virtue."

The proponents of the will of February 19, 1921, upon this contest being instituted, probated the will in solemn form.

The document, which we will term the second will, was not produced and could not be found. It is shown to have been regularly executed as a will and that it contained a revocation clause in it as follows:

"In the Name of God, Amen. I, Edmund M. Engle, of the County of Marion, State of Oregon, do make and publish this, my last will and testament, hereby revoking and making void, all former wills by me at any time heretofore made."

It is also shown that on about the 1st of June, 1928, the decedent presented the will probated and the deed mentioned, to an attorney of Woodburn for examination, when he was thinking of going to the hospital, after he had lived with Laura B. Pittenger about eleven years and the attorney dictated a codicil to the will describing the same and describing the deed, giving the dates, which codicil Mr. Engle signed and sealed in the presence of two witnesses, and formally declared it to be his last will and testament. The codicil contained a clause in substance, that if

"any legatee mentioned in the several instruments herein referred to, who shall presume to contest the said instruments or either of them or this codicil, shall be deprived of any interest whatever in my estate and the amounts bequeathed to them shall be divided equally amongst those who do not join in such contest."

This codicil was not found or probated after Engle's death. It is clearly shown by the testimony, that the will of Edmund M. Engle, deceased, dated February 19, 1921, was duly executed, freely and voluntarily, as his last will and testament.

■ ■ It is not shown that any undue influence of Laura B. Pittenger was exerted over Engle, the decedent, in connection with this will. The will was executed pursuant to a contract which was made beteen the decedent and Mrs. Pittenger and which had been carried out by Mrs. Pittenger until the date of the execution of this will, and thereafter was faith-

fully performed until the death of Mr. Engle. It is urged by contestants that the will of February 19, 1921, was duly revoked and anulled by the subsequent will executed in August, 1921.

This position does not avail the contestants for two reasons. First, the provision in a will devising land pursuant to a contract to devise the same, executed in confirmation of the contract, cannot be defeated by a subsequent revoking devise: 40 Cyc. 1088; *Stevens* v. *Myers,* 91 Or. 114 (177 Pac. 37, 2 A. L. R. 1155); *Nash* v. *Harrington,* 110 Kan. 636 (205 Pac. 354).

Where a testator has made his will in compliance with an agreement to devise land for a valuable consideration, such as his care and maintenance, during the remainder of his life, he has no lawful right to make a later will, contrary to his agreement, after its performance, or a large part of its performance by the devisee: *Goodin* v. *Cornelius,* 101 Or. 441 (200 Pac. 915); *Kelley* v. *Devin,* 65 Or. 211 (132 Pac. 535); *Woods* v. *Dunn,* 81 Or. 457 (159 Pac. 1158).

The second reason is, that a duly executed codicil operates as a republication of the original will; this although it is not physically annexed to the will: 28 R. C. L. 198, § 156; 51 A. L. R., Annotations, 652 et seq.

It is shown by the record that the testator executed a codicil in the presence of two witnesses, which codicil referred to the will probated, and the testamentary instrument in the form of a deed. And it is clearly shown that it was the intent of the testator that his will of February 19, 1921, should be revived and kept alive in full force and effect until and after his death: See 28 R. C. L. 201, § 157; *Osburn* v. *Rochester Trust & S. D. Co.,* 209 N. Y. 54 (102 N. E. 471, Ann. Cas. 1915A, 101, 46 L. R. A. (N. S.) 983).

We quote from 51 A. L. R., p. 654, note:

"Courts do not confine the testamentary disposition to a single instrument, but will consider several of different natures and forms and dates, constituting together the will of a decedent; so, a subsequent will will not necessarily work a revocation of a former one unless the latter expressly, or in effect, by being inconsistent, revokes the former. *Re Purdy* (1892), 1 Powers, 194, 47 N. Y. St. Rep. 284 (20 N. Y. Supp. 307)."

The effect of a codicil is to bring the will down to date, and it follows that a codicil to a will, not the last will, will revoke the last will, and revive the one to which it refers. The apparent theory is that as the republication of a will once revoked makes it speak as of the time of the republication, a codicil republishing an earlier will, operates as a revocation of a later one, making inconsistent disposition of the property: 51 A. L. R., notes 727, 728; 1 Jarman on Wills, p. 186.

Section 10104, Or. L., directs that:

"If after making any will the testator shall duly make and execute a second will, the destruction, canceling, or revocation of such second will shall not revive the first will, unless it appear by the terms of such revocation that it was his intention to revive and give effect to the first will, or unless he shall duly republish his first will."

It is contended by contestants that the word "republish" in this section means to "re-execute." With this contention we are not in accord. This statute plainly provides for republishing "his first will" where a second will is revoked or destroyed. By the execution of the codicil to the will of February 19, 1921, and declaring or publishing it as "his last will and testament" Engle regularly republished the

will probated. We do not hold under the facts of this case, that such will was ever legally revoked. It was not absolutely essential that the first will should be revived, or republished, at the time the second will was destroyed or revoked. The intent to revive and give effect to the first will, may be shown by the terms of an instrument of revocation, if there is one, or such intent may be expressed in a writing by which the testator republishes his first will.

Section 10095, Or. L., provides thus:

"Every will shall be in writing, signed by the testator, or by some other person under his direction, in his presence, and shall be attested by two or more competent witnesses, subscribing their names to the will, in the presence of the testator."

Although this law does not specifically require or direct that a will be published, nevertheless the word "published" used in reference to a will has a well-defined meaning.

" 'Publication' as used in reference to a will, signifies the act of declaring or making known to the witnesses that the testator understands and intends the instrument subscribed by him to be his last will and testament. *Lewis* v. *Lewis* (N. Y.), 13 Barb. 17, 23." 6 Words & Phrases [First Series], p. 5846.

It might be added that, except as to the revocation clause above quoted, the testimony does not show what the provisions of the second will were, or that the same was in any way inconsistent with the first will. In so far as it appears the general provisions of the second will may be identical with the former will. See note, 51 A. L. R., p. 655.

Mr. Engle was a man of fair education and well understood business. He had no children or nearer relatives than nieces and nephews. The testimony

shows that he disposed of his property as he desired. There were several bequests to relatives of from three to eight hundred dollars, each. The will is quite lengthy and exhibits his intent with much detail. It is a valid will.

Finding no error in the record the decree in the Circuit Court is affirmed. AFFIRMED.

RAND, BROWN and BELT, JJ., concur.