Argued November 5, affirmed November 23, 1973

LOCHARD, *Respondent, v.* VOSIKA, *Appellant.*

515 P2d 1320

*William E. Duhaime,* Medford, argued the cause for appellant. With him on the briefs were John W. Eads, Jr., and Brophy, Wilson & Duhaime, Medford.

*William H. Ferguson,* Medford, argued the cause for respondent. With him on the brief were Grant & Ferguson, Medford.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This is an action by a guest passenger for damages for personal injuries resulting from a one-car automobile accident. Defendant, the driver of the automobile, appeals from a judgment based upon a jury verdict for the plaintiff. We affirm.

The principal question to be decided is whether there was sufficient evidence of gross negligence to be submitted to the jury over defendant's motion for a directed verdict.

*Summary of the evidence.*

The accident occurred on Interstate 5 just south of Medford on a Saturday afternoon in May, 1971. Plaintiff and defendant were both young men and had previously worked together as forklift operators at a fruit packing plant in Medford. On that afternoon they picked up a six-pack of beer and drove to Emigrant Lake, near Ashland, where they drank the beer, swam, lay in the sun, "tried to talk to some girls" and were "just generally goofing around." There was no evidence, however, that either of them became intoxicated.

On the way back to Medford plaintiff fell asleep and was sleeping at the time of the accident. Defendant was knocked unconscious in the course of the accident

and had no memory of how it happened, other than hearing a "popping sound."

Shortly after entering the freeway near Ashland the Volkswagen in which they were riding was passed by a Mustang traveling at "around" 70 miles per hour. According to a passenger in the Mustang, the defendant then "flew by us" and "we all said, * * * he better watch it or he's going to get into a wreck. The way he zoomed by us," at a speed of 75 to 80 miles per hour.

That witness testified that defendant then continued on until he was "almost out of sight," but then "ran into a bunch of traffic." The Mustang then caught up with the defendant again and was "about neck and neck with him." According to the same witness, "* * * we got ready to pass him. And then he wouldn't let us by. He speeded up and wouldn't let us by * * * he looked like he was just kind of on a joy ride or something." At that time the Volkswagen was described as being driven by defendant at a speed "quite a ways over the speed limit" of 70 miles per hour.

The next thing that happened was that while driving on down the freeway in his Volkswagen, and in the course of the next mile, defendant proceeded to engage in three separate "swerving" maneuvers, described by the witness as "kind of like a slalom." In the first of these maneuvers, at a speed of "about seventy," the Volkswagen left the right lane of the highway and crossed a 10-foot paved "shoulder" until it "almost touched the dirt" or "hit the edge of the dirt," and then swerved back on the highway. That "dirt" consisted of a gravel area 12 to 15 feet wide.

In the second "slalom" maneuver, after slowing "a little bit," the Volkswagen again crossed the paved

"shoulder" until both right wheels were off the pavement and in the "dirt," after which defendant again swerved back on the highway.

In the third "slalom" maneuver, at a speed of about 60 miles per hour, the Volkswagen swerved across the paved "shoulder" until both the right and left wheels were "off" into the "dirt." According to the same witness, "as he [defendant] came back on he hit a 'reflector post' and went into a roll."

That witness also testified that "each time" the "slalom" maneuver was made "he got a little further into the dirt," but did "not really" seem to be out of control on any of these until the last and that on the first two of these maneuvers "he brought it back on the road fine."

According to the state police officer who arrived shortly after the accident, and photographs of the scene of the accident, the "reflector post" was located "a couple of feet" off the paved "shoulder." Also, according to the officer, there were skidmarks 225 feet long from the point where the Volkswagen first left the paved "shoulder" to the point where it rolled over.

*There was sufficient evidence of "gross negligence" to go to the jury.*

■ Since our decision in *Williamson v. McKenna,* 223 Or 366, 354 P2d 56 (1960), this court has been committed to the requirements as set forth in that case for application in all cases arising under the Oregon guest statute, ORS 30.115. As stated in *Williamson* (at 395), the first of these requirements is that "the defendant must intentionally do the act or intentionally fail to do the act which involves the risk."

The act which involved the risk in this case was the third "slalom" maneuver in which defendant's Volkswagen, at a speed of some 60 miles per hour, swerved from the highway, across the 10-foot paved "shoulder" and into the adjoining strip of gravel or "dirt."

Viewed as an isolated fact, it could hardly be found by a jury that such an act was intentional. When, however, that act is viewed as the culmination of a course of conduct which included a series of acts which were clearly negligent, if not reckless in themselves, we hold that under the facts of this case the jury could properly have found that this was an intentional act.

The first act in that series was the act of "zooming by" the Mustang at a speed of between 75 and 80 miles an hour, and after the Mustang had passed defendant the first time. That act was clearly intentional.

The second act was the act of again speeding up when the Mustang tried to pass defendant the second time, at which time defendant "wouldn't let us by" and "looked like he was just kind of on a joyride." That act was also clearly intentional.

The third act—and the first of the three "slalom" maneuvers—might not, as an isolated act, appear to have been intentional. But it was followed by two more similar maneuvers, each swerving slightly further into the "dirt." The eye-witness described the first two of these "slaloms" as being maneuvers in which defendant's Volkswagen was not out of control but apparently well under control.

It follows from this testimony that the jury could have properly found that when defendant's Volks-

wagen went into the third "slalom" maneuver it was not out of control, but that this was an intentional act by the defendant.

The second requirement, as stated in *Williamson* (at 396) is that "the defendant's conduct must involve a high degree of probability that harm will result." We believe that the jury could very properly find that to engage at a high rate of speed on an interstate freeway in "slalom" maneuvers in which the apparent "game" was to swerve as far as possible to the right and into the strip of ground or "dirt" adjacent to the paved "shoulder" of the highway, was to engage in a highly dangerous maneuver in which there was a "high degree of probability" that a light automobile, such as a Volkswagen, would either roll over or collide with a "reflector post" and then go out of control, resulting in serious injuries to the occupants. *Cf. Sherman v. McAllister,* 265 Or 630, 509 P2d 1176 (1973).

The third requirement is that of "recklessness," not necessarily in the sense of a "state of mind" or "actual consciousness of the risk," but "as inferred from evidence of the driver's conduct in the light of conditions and of what he must have known," as stated in *Williamson* (at 398). As also stated in that case (at 400) "a series or combination of negligent acts may constitute reckless conduct if taken together they indicate the so-called reckless state of mind." As also stated in the concurring opinion by O'CONNELL, J., in *Burghardt v. Olson,* 223 Or 155, 177-181, 349 P2d 792, 354 P2d 871 (1960), this is an objective test which may be satisfied even in the absence of any actual or express warning of danger to the driver.

We are of the opinion that there was such a series of negligent acts in this case from which the

jury could properly infer a "reckless" or "I don't care what happens" attitude on the part of the defendant.

After drinking beer and "goofing around" at Emigrant Lake defendant's first negligent act was to "zoom by" the Mustang at a speed of between 75 and 80 miles per hour after it had first passed defendant's Volkswagen. Not only was that conduct presumably in violation of the posted speed limit of 70 miles per hour, but the jury could infer that in passing the Mustang in that manner defendant showed a resentment at having been previously passed by it, if not an invitation to engage in a race, and at least an aggressive, if not a reckless attitude.

The jury could properly draw the same inferences from defendant's second act, in which defendant again accelerated his car and refused to let the Mustang pass it when that car came up beside the Volkswagen, "neck and neck."

Indeed, the jury could properly infer from these two instances of conduct, as did the passenger in the Mustang, that defendant was on "kind of a joy ride" and that "he better watch it or he is going to get into a wreck."

The final "combination of negligent acts" consisted of the "slalom" maneuvers in which defendant's Volkswagen, apparently under control by defendant, swerved across the 10-foot paved "shoulder," into the edge of the gravel or "dirt," and then back on the highway. As previously stated, we believe that the jury could properly find that the first two of these maneuvers were done intentionally, when considered as a part of the series of conduct which began when defendant "zoomed by" the Mustang.

We also believe that the jury could properly find, as it apparently did, that these "slalom" maneuvers, which culminated in the accident, were part of a "series or combination of negligent acts" of such a nature, when taken together, as to both "indicate recklessness," as an objective matter, as well as a reckless state of mind in the undertaking of the third "slalom" maneuver, which resulted in this accident.

For these reasons we hold that there was sufficient evidence of "gross negligence" in this case.

*There was no prejudicial error in the instructions.*

■ Defendant contends that the "court's instructions on the degree of fault required were confusing and misleading, and suggested that violations of standard definitions of speed, control and lookout would constitute types of gross negligence." We have examined the instructions, as given, and believe that when taken as a whole they were not misleading or confusing.

■ Defendant also assigns error to the giving of instructions on "physical facts" and "false witness." Although these instructions may not have been proper, we do not believe that defendant was prejudiced by the giving of such instructions.

Finding no error, we affirm the judgment of the trial court.