Argued and submitted August 18, 1980; resubmitted in banc February 12, reversed and remanded February 23, reconsideration denied April 9, petition for review allowed June 9, 1981 (291 Or 117)

FISHER,
*Appellant,*

*v.*

HUCK,
*Respondent.*

(No. A7903-01519, CA 16258)

624 p2d 177

Larry Dawson, Portland, argued the cause and filed the briefs for appellant.

Steven K. Blackhurst, Portland, argued the cause for respondent. With him on the brief was Lindsay, Hart, Neil & Weigler, Portland.

BUTTLER, J.

Richardson, J., dissenting opinion.

## BUTTLER, J.

Plaintiff, as an automobile guest passenger, seeks damages against his host driver for personal injuries sustained by him in a one car collision which occurred in British Columbia, Canada, when the vehicle driven by defendant left the highway when he fell asleep. In his original complaint, plaintiff alleged ordinary negligence in Count One, and gross negligence in Count Two. Defendant demurred to the negligence claim in Count One relying on ORS 30.115,[1] Oregon's former guest-passenger statute. Plaintiff contended British Columbia law applied, and because British Columbia had repealed its guest-passenger statute in 1969, he was not required to establish gross negligence in order to recover from the host driver. The trial court held that Oregon law applied and sustained defendant's demurrer. Plaintiff filed an amended complaint alleging only gross negligence, whereupon defendant moved for summary judgment, which was granted. Plaintiff appeals the order sustaining the demurrer and the order allowing summary judgment and dismissing his complaint. Because we reverse the order sustaining the demurrer, we need not reach the issues raised by the summary judgment.

Subsequent to entry of the judgment in this case, plaintiff filed an action in British Columbia involving the same accident. He alleged ordinary negligence by the driver and by the driver's sister, who owned the vehicle. Defendant filed a motion in this court for a stay of this appeal pending disposition of the British Columbia action. That motion is denied.

---

[1] At the time of this action, ORS 30.115 provided:

"No person transported by the owner or operator of a motor vehicle, an aircraft, a watercraft, or other means of conveyance, as his guest without payment for such transportation, shall have a cause of action for damages against the owner or operator for injury, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator or caused by his gross negligence or intoxication. As used in this section:

"* * * * *

"(2) 'Gross negligence' refers to negligence which is materially greater than the mere absence of reasonable care under the circumstances, and which is characterized by conscious indifference to or reckless disregard of the rights of others."

Whether the demurrer to plaintiff's negligence count was properly sustained depends on whether Oregon law or British Columbia law governs this action. Gone are the days when the choice of law in tort cases was relatively definite and simple. Prior to *Casey v. Manson Constr. Co.,* 247 Or 274, 428 P2d 898 (1967), the law of the place where the tort occurred controlled. *Casey* adopted the "most significant relationships" approach of the Restatement (Second) Conflict of Laws.[2] Since then, the choice of law has been based upon somewhat amorphous considerations, the evaluation of which depends in large measure on the semantics used by the court making the particular decision. Regardless of whether that approach represents progress, it was new and different when adopted, and is now with us.

[2] Restatement (Second) Conflict of Laws, § 145, at 414 (1969), states:

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place where the injury occurred,

"(b) the place where the conduct causing the injury occurred,

"(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

"(d) the place where the relationship, if any, between the parties is centered.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

Restatement (Second) Conflict of Laws, § 6, at 10 (1969), states:

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of the law to be applied."

When any court embarks on a determination of the "relevant policies of other interested states and the relative interests of those states in the determination of the particular issue" (Restatement, *supra,* n 2, § 6), the endeavor, in many instances, is like skeet shooting with a bow and arrow: a direct hit is likely to be a rarity, if not pure luck. With that chance of success in mind, we nock the arrow and draw the string.

The efforts of the Oregon court in two cases subsequent to *Casey* help to demonstrate the problem. In *Erwin v. Thomas,* 264 Or 454, 506 P2d 494 (1973), the issue was whether Washington or Oregon law applied to determine if plaintiff, a Washington resident, could recover for the loss of consortium of her husband, an Oregon resident, injured in Washington. Washington did not permit such actions; Oregon did. The court said:

> "Let us examine the interests involved in the present case. Washington has decided that the rights of a married woman whose husband is injured are not sufficiently important to cause the negligent defendant who is responsible for the injury to pay the wife for her loss. It has weighed the matter in favor of protection of defendants. [Footnote omitted.] No Washington defendant is going to have to respond for damages in the present case, since the defendant is an Oregonian. Washington has little concern whether other states require non-Washingtonians to respond to such claims. Washington policy cannot be offended if the court of another state affords rights to a Washington woman which Washington does not afford, so long as a Washington defendant is not required to respond. The state of Washington appears to have no material or urgent policy or interest which would be offended by applying Oregon law." 264 Or at 458-59.

Perhaps that analysis of the public policy of Washington is correct. But it is at least problematical whether it is any more correct than an analysis which concludes that Washington has decided that the rights of a married woman residing in Washington, whose husband is injured in Washington, may not recover for loss of consortium, it being against its public policy to recognize such rights regardless of the residency of the tortfeasor. If the *Erwin* court's analysis of the Washington policy is correct, it would seem to follow that a Washington court would permit

a loss of consortium claim against a non-resident defendant. That conclusion seems highly unlikely and under the alternative analysis just suggested that conclusion would not follow. By changing the semantics of the analysis only slightly, a different choice of law might result.

The court in *Erwin,* having analyzed the policy of Washington as it did, concluded that, even though Oregon's policy was to recognize those rights, this state had no compelling interest in enforcing them in favor of non-resident married women whose husbands are injured outside the state. The result, the court concluded, was a stand-off, because the policy of neither state had any significant relationship to the case. Accordingly, the court applied the law of the forum -- Oregon. If Washington had been the forum state and used the same approach the Oregon court used, it would have applied Washington law. That does not seem to be a very satisfactory way of resolving the rights of the parties; consistency would lie only in that the law of the forum would be applied, but forum shopping would be encouraged.

In the most recent case involving choice of law, *Tower v. Schwabe,* 284 Or 105, 585 P2d 662 (1978), the issue was whether British Columbia or Oregon law applied where both the guest-passenger plaintiff and host-driver defendant were Oregon residents, and the accident occurred in British Columbia. At that time, British Columbia had repealed its guest-passenger statute, but Oregon had not. If the "most significant relationships" approach has any merit in tort cases, as opposed to the *lex loci delicti, Tower* appears to be an example of such a case. Both plaintiff and defendant were Oregon residents who were on a trip to British Columbia; at the time of the accident they were returning to Oregon. In other words, Oregon was the only state with any real interest: the dispute was between two Oregonians in an Oregon court concerning an accident that happened somewhere else. Unless the court were simply to revert to the pre-*Casey* rule requiring application of the *lex loci delicti,* Oregon law would have had to be applied because all significant relationships were to Oregon. Although the court did apply Oregon law, in doing so it discussed what it thought was behind British Columbia's

policy in repealing its guest-passenger statute. Conceding some difficulty in that undertaking, the court concluded:

"\* \* \* Considered in the abstract, such a change may be said to serve at least one primary British Columbia interest. It makes it easier for a certain class of injured persons to obtain compensation for the harm they have suffered. Here, British Columbia is legitimately concerned only with the ability of its citizens to obtain compensation for their injuries. \* \* \*" 284 Or at 109.

Even considering that the court used the word "citizens" and "residents" interchangeably in its opinion, there was nothing to indicate that the rule imposing liability on the host for ordinary negligence was intended to be applied only for the benefit of British Columbia residents. One can only surmise that British Columbia's only "legitimate concern" was with the ability of its "citizens" to obtain compensation for their injuries on the presumed premise that the British Columbia government would be required, under its social welfare programs, to take care of the uncompensated guest, if a "citizen," but that no such obligation would exist with respect to the non-citizen. However, we do not know that to be the case; but if it is, then it would seem to follow that if the guest is a British Columbia resident and is injured by an Oregon host in Oregon, British Columbia law should apply regardless of the forum. Whether the ancient maxim, "Once an Englishman, always an Englishman,"[3] would prevail over Oregon's stated policy (at the time) of protecting its hosts against injured and ungrateful guests, *(Tower v. Schwabe, supra,* 284 Or at 108), would present a true conflict.

Our purpose in discussing at length the *Erwin* and *Tower* cases is to point out the hazards involved where one state attempts to enunciate the public policy of another jurisdiction. Most courts have more than enough difficulty discerning the policies of the jurisdiction in which they sit. Moreover, as we view *Tower,* it was not necessary for the court to delve into British Columbia's public policy in repealing its guest-passenger statute. All of the significant relationships militated in favor of applying Oregon law

---

[3] That maxim is to be contrasted with the even more ancient one, "When in Rome, do as the Romans do."

regardless of the British Columbia policy unless the place of the wrong were to control.

In the case at bar, we have the converse of *Tower;* the only common factor is that the accident in each case occurred in British Columbia. Here, the host driver was a resident of British Columbia and, according to the complaint, the guest was going to British Columbia for the purpose of taking prearranged employment and establishing residence there. Those facts are admitted for the purpose of the demurrer. Oregon's only involvement is that it is the forum state. In all other respects, British Columbia has the only significant relationships and has as much interest in the application of its law as any jurisdiction could have in this kind of case. If Oregon has an interest, it is in protecting an Oregon host against an ungrateful guest under its guest-passenger statute in effect at the time of the accident.[4] *But* the host here is not an Oregon resident and the statute enunciating the policy relied on has been repealed so that, notwithstanding its technical applicability to this accident, it is no longer the public policy of this state.

As we have pointed out, we believe the court's language in *Tower* attempting to enunciate the British Columbia policy was unnecessary to its decision. We have also indicated that it is reasonable to conclude that British Columbia's policy is to permit any guest passenger to obtain compensation against a negligent host driving on British Columbia highways. Because Oregon's now defunct policy does not conflict with the British Columbia policy, British Columbia law ought to apply. The demurrer should have been overruled.

The dissent would apply Oregon law and therefore would affirm the sustaining of defendant's demurrer, but would reverse the granting of summary judgment for defendant on Count II of plaintiff's complaint. If we were to reach that question, we would agree with the latter conclusion reached by the dissent. We also point out that the facts

---

[4] Plaintiff does not contend that the repeal of the guest-passenger statute as applied to automobiles (Oregon Laws 1979, chapter 866) affects this case filed before the effective date of the statute.

developed in connection with the motion for summary judgment would not change our decision on the demurrer.

We reverse the trial court's order sustaining defendant's demurrer to Count I, vacate the judgment for defendant and remand for further proceedings.

Reversed and remanded.

**RICHARDSON, J.,** dissenting.

Contrary to the majority, I conclude Oregon law applies and would affirm the order sustaining the demurrer. Because I conclude the demurrer was properly sustained, it is necessary to review the order granting defendant's motion for summary judgment. I conclude the motion for summary judgment should not have been granted.

Oregon has adopted a two-step analysis for choice of law problems in the torts area. The first step is to determine if there is a "conflict." To accomplish this, we examine the interests and policies which underlie the respective laws. As stated in *Erwin v. Thomas,* 264 Or 454, 506 P2d 494 (1973):

"Where, in the particular factual context, the interests and policies of one state are involved and those of the other are not (or, if they are, they are involved in only a minor way), reason would seem to dictate that the law of the state whose policies and interests are vitally involved should apply; or, if those of neither state are vitally involved, that the law of the forum should apply.* * *" 264 Or at 458.

In the most recent case in this area, *Tower v. Schwabe,* 284 Or 105, 585 P2d 662 (1978), the Supreme Court noted:

"* * *[I]t is necessary to examine the interests and policies involved in the present case of both British Columbia and Oregon for the purpose of determining whether both have a substantial interest because, if one or the other has no such interest, it is unnecessary to proceed further." 284 Or at 108.

If both jurisdictions have a substantial interest in having their law applied, we then look to see which has the "most significant relationship," and on that basis, decide which law should ultimately be applied. *Erwin v. Thomas, supra; Casey v. Manson Constr. Co.,* 247 Or 274, 428 P2d 898 (1967). Our first step is to identify the respective interests.

The Supreme Court in *Tower,* identified the relevant interests and policies of Oregon's former guest passenger statute and British Columbia law respecting the right of recovery against a host driver. The court identified "the policy underlying ORS 30.115 as protection of a generous and hospitable host from being held liable for injuries at the instance of an ungrateful guest." 284 Or at 108. *See also Duerst v. Limbocker,* 269 Or 252, 256, 525 P2d 99 (1974). The policy underlying British Columbia's repeal of its guest passenger statute was stated as follows:

"\* \* \*Here, British Columbia is legitimately concerned only with the ability of its citizens to obtain compensation for their injuries.\* \* \*" 284 Or at 109.

The majority grudgingly accepts the method of analysis set out above, but concludes that because plaintiff and defendant are Canadian residents, Oregon law should not be applied but without really identifying what policy British Columbia has to protect.

In *Tower v. Schwabe, supra,* the Supreme Court found that British Columbia's only interest was in the ability of its citizens to obtain compensation for injuries. The Supreme Court, however, did not identify this concern as a substantial policy which British Columbia was fostering by its laws regarding automobile negligence actions. A concern that citizens be compensated for injuries is a common concern of states and countries. If that concern becomes a substantial policy deserving protection, then we would be reduced to determining the citizenship or residency of the plaintiff and applying the law of that jurisdiction, unless the forum state had some overriding policy.

British Columbia repealed its guest passenger statute in 1969. Consequently, guest passenger plaintiffs and host defendants were placed in the same category as other plaintiffs and defendants in automobile negligence actions. Rather than being a policy respecting guest pasengers and host drivers, repeal of the statute simply was an inclination no longer to accord special treatment to that class of litigants. I conclude that British Columbia has no special policy to protect by its tort law. By repeal of its guest passenger statute, British Columbia has discontinued any special concern for host drivers. In short, British Columbia has no

substantial policies respecting litigation between a host defendant and a guest passenger plaintiff which we should protect.

Plaintiff has selected Oregon as the forum and we ought to apply the local law unless there is a substantial reason not to do so. We should not search for a reason not to apply Oregon law in this case. There is no conflict of policies in the case, so the law of the forum should be applied. *Erwin v. Thomas, supra.*

If the majority is correct that British Columbia has a policy of allowing its citizens or residents to be compensated for injuries in order that that person will not become a public charge, I conclude the plaintiff is not a citizen or resident of British Columbia entitled to the benefit of that policy. Plaintiff alleged in his complaint that:

"I

"On or about [August] 8, 1978, plaintiff was a passenger in a vehicle being operated by defendant a citizen and resident of British Columbia, Canada. Defendant had transported plaintiff to Canada for the purpose of plaintiff reporting to a prearranged employment situation and establishing plaintiff's residence there."

A demurrer admits as true all well pleaded facts and we give plaintiff the benefit of all reasonable inferences that can properly be drawn from those facts. *Davidson v. Wyatt,* 289 Or 47, 64, 609 P2d 1298 (1980); *Lincoln Loan v. State Hwy. Comm.,* 274 Or 49, 52, 545 P2d 105 (1976); *Lyden v. Goldberg,* 260 Or 301, 490 P2d 181 (1971). In determining the status of residency, the Supreme Court has adhered to long recognized tests respecting changes in domicile or residence. In *Elwert v. Elwert,* 196 Or 256, 248 P2d 847, 36 ALR2d 741 (1952), the court stated:

"* * * To constitute a change three things are essential: (1) residence in another place, (2) an intention to abandon the old domicil, and (3) an intention to acquire a new domicil. * * *" 196 Or at 265.

*See also Smith v. Smith,* 205 Or 650, 655, 289 P2d 1086, 54 ALR2d 893 (1955); *In re Noyes' Estate,* 182 Or 1, 14, 185 P2d 555 (1947); *Zimmerman v. Zimmerman,* 175 Or 585, 155 P2d 293 (1945).

In *Doyle v. Doyle,* 17 Or App 529, 522 P2d 906 (1974), we recognized that a person has only one domicile, and until a new one is established, that domicile continues. A change in domicile requires both the fact of a fixed habitation or abode in a particular place and a simultaneous intent to remain there permanently or indefinitely. *Elwert v. Elwert, supra,* at 264-65. Both residence and intention must be present. Neither standing alone is sufficient. Plaintiff did not become a British Columbia resident or citizen merely by driving out of Oregon with an intent to remain indefinitely in British Columbia. Even allowing plaintiff all reasonable inferences from this allegation, we cannot say plaintiff acquired a new domicile of choice in British Columbia. He was neither a British Columbia resident nor citizen for the purpose of acquiring protection under British Columbia's law. *See also In re Estate of Jones,* 192 Iowa 78, 182 NW 227, 16 ALR 1286 (1921).

Because I conclude the demurrer was properly sustained, I conclude it is necessary to discuss plaintiff's second assignment of error: that the trial court should not have allowed defendant's motion for summary judgment on plaintiff's gross negligence claim. To warrant summary judgment, the moving party must establish that there is no material fact in dispute and that he is entitled to a judgment as a matter of law. We review the record in the light most favorable to the party opposing the motion, giving that party the benefit of all reasonable and proper inferences of fact which can be drawn from the depositions and affidavits. *Stanfield v. Laccoarce,* 288 Or 659, 607 P2d 177 (1980); *Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978); *Forest Grove Brick v. Strickland,* 277 Or 81, 559 P2d 502 (1977). Our only function is to determine whether plaintiff was entitled to a jury determination on the issue of defendant's gross negligence. *Seeborg v. General Motors Corporation, supra.* Put another way, "[o]ur concern is only with the existence of evidence which, if accepted as being true by the trier of fact, would establish that the host is liable under the statutory limitations upon the right of the guest to recover." *Wootten v. Dillard,* 286 Or 129, 136, 592 P2d 1021 (1979).

Plaintiff, defendant and three other individuals left Portland for Strathnaver, British Columbia, in the late

afternoon of August 10, 1978. Defendant apparently awoke around noon that day and spent the time before their departure relaxing and packing for the trip. The evidence is in conflict as to the exact driving sequence. Plaintiff stated he thought defendant's sister drove from Portland to the Canadian border. Defendant, in his first deposition, stated he drove the entire time before the accident. In a later deposition, he stated he drove from Portland to the border and that his sister then drove for the next three or four hours. This latter statement was corroborated in defendant's sister's deposition. They stopped three or four times for food and gasoline before crossing the border. They then drove three or four hours to a rest stop, arriving there at approximately 4:30 a.m.

The depositions are in conflict as to the reason they stopped at the rest stop. Defendant initially stated he had become tired. His subsequent deposition relates that the stop occurred because his sister became tired. Again, this was supported by the deposition of defendant's sister. Defendant testified he was awake when they stopped. His sister stated she thought everyone was asleep.

There is evidence that defendant slept on and off during the time his sister drove. This evidence conflicts with defendant's initial statement that he drove the entire way to the rest stop. They remained at the stop for approximately one hour. Defendant initially stated he tried to sleep but could not. He later stated that he walked around with another passenger for some period of time and briefly attempted to sleep. Defendant offered to drive when he could not sleep any longer. He drove until the accident occurred around 6 a.m.

The highway where the accident occurred was paved and straight. It had just begun to become light. Everyone else was asleep in the car. Defendant stated that he fell asleep at the wheel and awoke as the car left the roadway. He tried to control the vehicle but it overturned. Plaintiff was thrown out of the car. All the other passengers remained in the vehicle and suffered only minor injuries.

Defendant stated that he was fully rested and awake when he left the rest stop. He stated he was awake

648

one moment before the accident and asleep the next and that he had had no trouble staying awake at any time before the accident. He also stated, however, that he did not recall falling asleep or becoming drowsy. He told both his sister and the investigating officer right after the accident that he "fell asleep at the wheel," and that he did not remember anything from the time he left the rest stop up to the time of the accident. Finally, defendant stated without explanation, that he had intended to stop at the next town, which was about six miles from the accident scene.

Plaintiff submitted an affidavit from a physician specializing in neurology who was familier with normal sleep patterns. He opined that in normal sleep patterns a person has a number of physiological warnings of impending sleep before losing consciousness due to sleep. He specifically disputed defendant's assertions that he suddenly fell asleep without warning as being contrary to normal human behavior relative to sleep. Plaintiff also submitted a statement from defendant's sister to the effect that it was not normal for defendant to be fully awake one moment and asleep the next.

At the time of this action, an Oregon guest passenger had to establish that a host driver was grossly negligent before being entitled to recovery. ORS 30.115. In *Williamson v. McKenna,* 223 Or 366, 354 P2d 56 (1960), the Supreme Court adopted as the standard for defining gross negligence under Oregon's guest passenger statute, the definition set forth in 2 Restatement, Torts (Second) 587, § 500 (1965), which provides:

"The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."[1]

[1] This language differs somewhat from that used in the original Restatement and adopted in *Williamson.* No change in substance was intended, however, by the drafter's of § 500 in Restatement (Second) Torts. *See* 3 Restatement (Second) Torts Appendix § 500, Reporters' notes (1966). "No change in substance intended."

Comment *a* to that section further explains the nature of the conduct required for recklessness as follows:

"* * * It must not only be unreasonable, but it must involve a risk of harm to others substantially in excess of that necessary to make the conduct negligent. It must involve an easily perceptible danger of death or substantial physical harm, and the probability that it will so result must be substantially greater than is required for ordinary negligence." Id. at 588.

In *Hill v. Garner,* 277 Or 641, 646, 561 P2d 1016 (1977), the court noted also that

"* * * in order to show gross negligence it is incumbent upon the plaintiff to prove that defendant's conduct, when measured objectively, reveals 'a state of mind indicative of an indifference to the probable consequences of one's acts.' This state of mind has been described as an 'I don't care what happens' attitude. *Bottom v. McClain* [260 Or 186, 489 P2d 940 (1971)] at 191-92.* * *" 277 Or at 646.

To constitute reckless conduct or gross negligence, a defendant must intentionally do an act in the face of manifest danger; the conduct must be dangerous in that the defendant must either know it creates a strong probability of serious harm or have reason to know of facts which would lead a reasonable man to realize such a risk; and the recklessness may be found in circumstances where the defendant did not realize the extreme risk of harm but where such risk would be appreciated by a reasonable person under the circumstances. *Williamson v. McKenna, supra.* The standard is an objective one and gross negligence may be inferred from evidence of a defendant's conduct in light of conditions and what reasonably must have been known. A defendant need not appreciate the danger if a reasonable person under the circumstances would. *Lochard v. Vosika,* 267 Or 213, 515 P2d 1320 (1973); *Turner, Adm'r, v. McCready et al.,* 190 Or 28, 222 P2d 1010 (1950).

Both parties rely on the above standard and *Smith v. Williams,* 180 Or 626, 178 P2d 710, 173 ALR 1220 (1947). *Smith* involved a guest passenger's action against his host driver for injuries suffered when the defendant fell asleep at the wheel. The defendant in *Smith,* was driving in the early morning hours on a highway of loose rock and gravel.

He had been up all night, had become sleepy, knew he was sleepy, but felt he could continue to drive safely. The Supreme Court reversed an order of involuntary nonsuit entered upon defendant's motion, finding sufficient evidence from which the trier of fact could have reasonably concluded defendant was grossly negligent.

The Supreme Court adopted the language of a Michigan Supreme Court opinion as the applicable rule in determining if a driver who falls asleep at the wheel is guilty of gross negligence. The quoted rule is as follows:

> " '* * * To constitute gross negligence in falling asleep while driving there must have been such prior warning of the likelihood of sleep that continuing to drive constitutes reckless disregard of consequences. There must be an appreciation of the danger of falling asleep or circumstances which would cause a reasonably prudent person to appreciate it and proceeding in defiance of results.* * *' " *Boos v. Sauer,* 266 Mich 230, 253 NW 278 (1934). 180 Or at 638.

The court applied the quoted rule and concluded:

> "We hold that evidence that respondent drove a bantam automobile over a road which was surfaced with loose rock and gravel at a speed upward of 50 miles per hour at 4:00 in the morning while he was sleepy, knew he was sleepy and notwithstanding this knowledge continued to drive and did go to sleep thereby permitting the car to leave the road and turn over, is sufficient to take this case to the jury on the issue of gross negligence. We hold this constitutes evidence of conduct which indicates an indifference to the probable consequences of the act, a reckless disregard of the rights of others." 180 Or at 643.

In order to prevail on a theory of gross negligence when a host driver falls asleep the guest passenger must establish that the driver had sufficient prior warning of the likelihood of sleep to reduce the substantial risk of injury, but continued to drive in the face of that risk.

It is common knowledge that falling asleep while driving a vehicle creates an immediate and substantial risk of injury or death to the occupants of the vehicle. Every driver of a vehicle is charged with appreciation of that substantial risk. However, falling asleep while driving is

not gross negligence unless the driver had or reasonably should have had forewarning of the likelihood he would fall asleep and continued to drive. Defendant contends there is no direct or circumstantial evidence that he had any forewarning. He testified in his deposition that he was not tired, was fully awake and suddenly fell asleep just prior to the accident. Plaintiff argues that under all the circumstances defendant should reasonably have been aware of the likelihood he would fall asleep if he continued to drive the vehicle.

It is not our function to weigh the evidence and determine issues of credibility. We examine the record to determine if there is sufficient evidence from which a trier of fact could determine if defendant was grossly negligent. We conclude there is. The party had been travelling consistently from early afternoon through the night. There was evidence that most of the persons were tired and falling asleep. Defendant's depositions indicate that he had done all or most of the driving, a factor which would contribute to fatigue and normal sleep processes. The evidence is in conflict as to the reason the parties stopped at the rest stop. They stopped either because defendant was tired or because his sister was sleepy. The affidavit of the neurologist specifically disputed defendant's claim that he suddenly fell asleep without warning. Under all the circumstances disclosed by the depositions and affidavits we cannot say as a matter of law that there was insufficient evidence from which a trier of fact could rationally conclude defendant was grossly negligent. The court erred in granting defendant's motion for summary judgment.

I would affirm the order granting the demurrer and reverse the summary judgment given in favor of defendant. I dissent from the majority's decision to overrule the demurrer.

Thornton, J., joins in this dissent.