IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| TIFFANY C. TELFER, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 130478C |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION** |

The court entered its Decision in the above-entitled matter on April 24, 2014. The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision was entered. The court's Final Decision incorporates its Decision without change.

Plaintiff appeals Defendant's Notice of Determination and Assessment (Assessment) dated June 26, 2013, for the 2008 tax year. Trial was held on March 17, 2014, in the courtroom of the Oregon Tax Court, Salem, Oregon.[1] Chris Telfer, CPA, appeared on behalf of Plaintiff. Plaintiff Tiffany C. Telfer (Telfer) testified on her own behalf. Debbie Smith (Smith) appeared and testified on behalf of Defendant. No exhibits were received from Plaintiff. Defendant's Exhibits A to I were received without objection. Defendant also submitted a document with her

/ / /

/ / /

/ / /

---

[1] Trial in this matter was originally scheduled for February 10, 2014, but set over to March 17, 2014, due to inclement weather. Plaintiff did not submit any exhibits to the court or Defendant prior to the February 10, 2014, trial date.

exhibits titled Trial Presentation, that is an overview of the nine exhibits exchanged prior to trial, portions of which were offered and admitted.[2]

## I.  STATEMENT OF FACTS

Plaintiff was living in Oregon and initially registered to vote in this state in 1992, when she turned 18.  Plaintiff obtained an Oregon driver's license in 1989.  (Def's Ex A at 1.)

The court found Plaintiff's testimony confusing as to when she was living in the state of Washington.  Plaintiff testified that she attended college in the state of Washington between 1992 and 1996.  According to Plaintiff's sworn testimony she "lived" in Washington during those years.  Plaintiff apparently returned to Oregon after graduating.  Plaintiff testified that she moved back to Washington in January 1997 and lived and worked in that state until December 2003.  There was no testimony or evidence offered by either party as to what transpired in Plaintiff's life (*e.g.*, where Plaintiff lived or worked) between 2003 and 2007.

Depending upon whether Plaintiff calculated the amount of time she was in Washington by months or calendar years, the timeline set forth immediately above suggests Plaintiff was living in Washington for 10 or 11 years.  However, Plaintiff on several occasions testified that she had spent a total of nine years living in the state of Washington prior to the year at issue (2008).  And, during Plaintiff's testimony on direct examination as to her voting activity and states in which she was registered to vote, Plaintiff testified that she was registered to vote in Washington between 1996 and 2006.

The parties agree Plaintiff was living in Oregon in 2007, and was unemployed at the end of that year.  Plaintiff testified that she decided to move back to Washington sometime in early

---

[2] That document is akin to an opening statement.  Although the court does not treat it as such, the document does nonetheless have significance because it provided Plaintiff with insights into issues and concerns Defendant would likely address at trial.  The issues were also addressed at the case management hearing with the parties on November 4, 2013.

December 2007.  On cross-examination she testified that she was not working at the time, and that she had ended a relationship with her then "previous boyfriend" on December 6, 2007.

Plaintiff also testified on cross-examination that she registered a 2001 Audi automobile in Oregon on December 24, 2007, four days before she moved some of her belongings to Washington (see discussion immediately below).  Defendant's Exhibit G is a computerized printout of the Oregon Department of Motor Vehicles (DMV) record showing that Plaintiff registered a 2001 Audi on December 24, 2007.  Smith asked Plaintiff why she registered that vehicle in Oregon on December 24, 2007, if she was planning to move to Washington within a few days.  Plaintiff responded that she "had just registered and paid all of the money to register [her] car in Oregon [and] wasn't financially able to pay Washington the Washington registration fee, which is significantly more than in Oregon."

Plaintiff testified that she "went up [to Washington] on December 28, 2007, with some of [her] belongings and officially took residence at the home that [she] resided in the entire year of 2008 on January 1, 2008."  Plaintiff further testified that she "was a resident of Washington for nine years prior to moving back to Washington in 2008."

According to her sworn testimony, the reason Plaintiff moved from Oregon to Seattle, Washington, in January 2008 was to find employment.  Plaintiff testified that her father paid her moving expenses, which included the rental of a U-Haul truck, because Plaintiff did not have the funds to pay for the move herself.  There are no receipts, rental contracts, or other documents to corroborate that testimony, and neither Plaintiff's father, mother, or any other individual testified about Plaintiff's alleged move to Washington.

Plaintiff testified that when she moved to Washington in January 2008, she rented a three-story, two-bedroom home located at 5242 37th Avenue NE, Seattle, pursuant to a verbal

contractual agreement with the owner of the home, Josh Vall-Spinosa (Vall-Spinosa).[3]  (Def's Ex C at 1.)  According to the testimony and a letter written by Vall-Spinosa, admitted into evidence by Defendant at trial, Plaintiff and Vall-Spinosa "had a verbal contractual lease agreement for *a period of time in 2008 and 2009 * * *"* pursuant to which Plaintiff agreed to pay Vall-Spinosa rent in the amount of $500 per month.  (Def's Ex C at 1) (emphasis added). Vall-Spinosa's letter indicates that he had known Plaintiff "since September of 2002," and that "[i]n December of 2007, Miss Telfer contacted [Vall-Spinosa] to inquire about possible availability of any of my rental properties as she was to be moving to Seattle from Bend [Oregon] in January 2008." (*Id.*)  According to the evidence, the rent was established at the price of $500 per month because the home was undergoing a major renovation that converted the home from two bedrooms to five and added a bathroom.

According to testimony, on August 12, 2008, Plaintiff personally visited the Oregon DMV office in Bend, to request a duplicate copy of her Oregon driver's license.  Testimony from direct and cross-examination reveals that Plaintiff did indeed go into the office in Bend on August 12, 2008, to request a duplicate of her Oregon driver's license, and that she asked the DMV to mail the license to the address of her boyfriend's home in Bend, Oregon.  Plaintiff testified that she had put in a change of address request with the U.S. Postal Service because she was living in Washington, but that the duplicate of her Oregon license was returned to the DMV as undeliverable, notwithstanding that change of address notification.  There is no documentary

/ / /

---

[3] Defendant included a two-page document with its exhibits, signed by its representative Smith, that is titled "Trial Presentation."  That document was not labeled as an exhibit; it is written in narrative form and is essentially a trial memorandum.  In that document, Smith identifies the owner of the Seattle home Plaintiff testified she rented while living there in 2008 as "Vali-Spinosa."  However, the letter Defendant admitted, marked as Exhibit C, is written and signed by the homeowner; below his signature, that individual typed his first and last names.  The last name appears to the court to be "Vall-Spinosa."  There was no testimony clarifying the apparent discrepancy.

evidence to corroborate Plaintiff's testimony about the U.S. Postal Service notification of her change of address from Oregon to Washington.

Plaintiff testified that she received a traffic ticket for speeding on Highway 26 near Boring, Oregon, on October 12, 2008, during a return trip from Bend, Oregon, to Seattle after travelling to Bend for a weekend event there.

Plaintiff testified that she bought a 2005 Audi automobile in Washington in August 2008 and paid a sales tax to the state of Washington in the amount of $2,092.04. Plaintiff registered that vehicle in the state of Washington at the time of purchase. Defendant does not dispute that Plaintiff registered a 2005 Audi in Washington in August 2005, although there is no documentary evidence admitted to corroborate that testimony. The court nonetheless accepts the parties' mutual agreement on that matter as a fact for purposes of this decision.

Plaintiff was then questioned by her representative about the tax structures in the states of Washington and Oregon. The essence of that testimony was that Oregon's revenue is generated by a personal income tax whereas Washington derives its revenue by a sales tax. No mention was made of a property tax in either state. That line of questioning was continued, with Plaintiff pointing out that she paid $2,092 (approximately) in sales tax to the state of Washington for the purchase of the 2005 Audi in that state. Plaintiff's representative followed up by pointing out that "Oregon is now asking for tax for their state in the amount of $1,909." Plaintiff's response was simply "correct."

According to testimony, on December 26, 2008, Plaintiff again visited the Oregon DMV office in Bend. On that occasion, Plaintiff requested that the duplicate license be mailed to her father's address in Bend, Oregon. Plaintiff explained that "during the holidays [she] was home visiting [her] family and that [her] purse, wallet, keys, everything, was stolen," and that she was

travelling to Hawaii for a vacation "within a matter of days," and that she "needed to obtain some sort of identification to board the plane."

Plaintiff testified that she retained her Oregon driver's license after moving to Washington in January 2008. Plaintiff testified that she did not bother to get a Washington driver's license because she had a valid Oregon license and did not think it was necessary to get one in Washington. When questioned by her representative, Plaintiff testified that she "always just assumed that a driver's license was a license to drive, and identification, but not necessarily establishment of residency." Plaintiff further testified that she "held" her Oregon driver's license all four years of college while she was "living" in Washington from 1992 to 1996. Plaintiff's representative asked Plaintiff if she would have had to pay a fee to the state of Washington to get a driver's license in that state, and Plaintiff responded by stating that she would have had to pay "a fee and a tax."

Plaintiff did not notify the county elections office in Oregon that she was moving to Washington, and Plaintiff retained her Oregon voter registration. The testimony on Plaintiff's voter registration was somewhat confusing and incomplete, but several key points were brought out during direct examination. First, Plaintiff previously retained her Oregon voter registration while living in Washington from 1996 to sometime in early or mid-2000. Second, Plaintiff testified that she was also registered to vote in Washington "upon renewal of a driver's license * * * in 1996." Third, Plaintiff testified that she "never exercised [her] right to vote * * * [in either state between 1996 and 2006] but did receive ballots from both states."[4] Fourth, a point of particular importance to Plaintiff: Plaintiff received an absentee ballot in 2008 while living in

---

[4] The reference to 2006, like many other statements made during the trial either by representatives or witnesses, conflicts with the testimony that Plaintiff was in Washington a total of nine years prior to her alleged move to that state in 2008, and that she had attended college between 1992 and 1996.

Washington but did not vote in the election that year even though her mother was running for the Oregon State Senate that year.

Defendant mailed Plaintiff a "residency" questionnaire to determine whether she was required to file an Oregon income tax return and pay taxes to Oregon in 2008. Smith testified that the questionnaire was returned to her and that the questionnaire indicated that Plaintiff's dwelling was in Oregon in 2008 and that she spent 350 days in Oregon that year. (*See also* Def's Ex D at 2.) Smith testified that she thought there might have been a mistake on that questionnaire, to the effect that Plaintiff had moved to Washington in 2008, based on earlier conversations she had had with Plaintiff's representative, Chris Telfer. Smith telephoned Plaintiff's representative about that apparent inconsistency and, shortly thereafter (5 to 10 minutes), Defendant received "another questionnaire" that had been faxed to her from Plaintiff's representative's office in Bend. Plaintiff was living and working in Eugene, Oregon, at the time. Plaintiff testified that her representative contacted her after speaking with Smith and that Plaintiff had a copy of the questionnaire in her possession, which she corrected to indicate that she was renting a dwelling in Washington, not Oregon, in 2008, and that she lived in Washington all but six days of that year. (Def's Ex D at 4.) Both questionnaires were admitted into evidence without objection.

Plaintiff testified that she moved to Washington from Bend, Oregon, in January 2008 to look for work because she felt that there was more opportunity for employment in the Seattle area. Plaintiff had also previously lived in Washington for nearly either nine or 12 years. Plaintiff returned to Bend, Oregon, from Seattle, Washington, in July 2009, 19 months after moving to Washington, because she was unable to find a full-time job in that state. Plaintiff testified that she did have two short-term contract jobs while living in Washington. According to

Smith's uncontroverted testimony, Plaintiff also earned $1,500 in 2008 from an Oregon business that she was involved in with her mother. Plaintiff's mother was living and working in Bend, Oregon, that year, and Plaintiff was living in Washington. (*See also* Def's Trial Presentation at 1.[5]) Smith testified that the $1,500 was nonemployee compensation that came from a business located in Bend, Oregon, called "The Trunk Club." Plaintiff acknowledged on cross-examination that she received approximately $1,500 from that business. Smith testified that she understood that the type of advertising business Plaintiff was involved in could be conducted "over the internet."

## II. ANALYSIS

This case focuses on Plaintiff's residency/domicile in 2008.

ORS 316.037(1)(a) imposes a "tax * * * on the entire taxable income of every resident of this state."[6] ORS 316.037(3) conversely imposes a "tax * * * on the taxable income of every full-year nonresident that is derived from sources within this state."[7]

Oregon defines a "resident" as "[a]n individual who is domiciled in this state * * *." ORS 316.027(1)(a)(A). Specifically, the statute provides, in pertinent part:

"(a) 'Resident' or 'resident of this state' means:

"(A) An individual who is domiciled in this state unless the individual:

"(i) Maintains no permanent place of abode in this state;

"(ii) Does maintain a permanent place of abode elsewhere; and

/ / /

---

[5] That document was submitted to the court by Smith prior to trial as part of Defendant's exhibits.

[6] The court's references to the Oregon Revised Statutes (ORS) are to 2007 for all issues pertaining to the residency question and taxation of Plaintiff's 2008 income, and to 2013 for any procedural issues involved in the resolution of this appeal.

[7] ORS 316.037(2) likewise imposes a tax "for each taxable year upon the entire taxable income of every part-year resident" of Oregon.

"(iii) Spends in the aggregate not more than 30 days in the taxable year in this state[.]"

Because the conditions of ORS 316.027(1)(a)(A)(i) to (iii), that delineate who is and is not an Oregon domiciliary, are listed in the conjunctive, a taxpayer domiciled in Oregon who fails to meet any one of the three conditions is considered a resident of Oregon.

As this court recently noted in *Ashby v. Dept. of Rev.*, 21 OTR 47, 51 (2012) (*Ashby*), Oregon statutes do not define the word "domicile." *Id.* In *Ashby*, this court looked to *Black's Law Dictionary*, which provides the following definition of domicile:

> "The place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere."

*Id.* (*citing Black's Law Dictionary* 523 (8th ed 2004)). The Oregon Supreme Court has in the past stated that domicile is a *common law* concept comprised of two components: "a fixed habitation or abode in a particular place, and an intention to remain there permanently or indefinitely." *dela Rosa v. Dept. of Rev.* (*dela Rosa*), 313 Or 284, 289, 832 P2d 1228 (1992) (*citing Elwert v. Elwert*, 196 Or 256, 265, 248 P2d 847 (1952)). In *Ramsey v. Dept. of Rev.*, 7 OTR 478, 481 (1978), this court stated that an abode is generally understood as signifying "a building or shelter which is the dwelling place of a person."

Oregon's Administrative Rule (OAR) 150-316.027(1)(1)(a) defines "domicile" as "the place an individual considers to be the individual's true, fixed, permanent home" and as "the place a person intends to return to after an absence."

Although an individual can have more than one residence, he "can have but one domicile." *dela Rosa*, 313 Or at 289 (internal quotation marks omitted); *see also Zimmerman v. Zimmerman*, 175 Or 585, 591, 155 P2d 293 (1945); OAR 150-316.027(1)(a).

Given the inherent difficulties in ascertaining intent, "triers of the fact of domicile rely heavily upon the overt acts of the individual as true indicators of his state of mind. Nevertheless, the whole aim of the inquiry is to discern the true intent." *Hudspeth v. Dept. of Rev.*, 4 OTR 296, 298-99 (1971); *see also*, *dela Rosa*, 313 Or at 289-90 (stating that domicile, while based on intent, must be established by all the facts and circumstances). Thus, "determination of an individual's domicile is based on intent supported by facts and circumstances rather than merely the statements of the individual." *Butler v. Dept. of Rev.*, TC-MD No 050801D, WL 2041284 at *4 (July 18, 2006). Factors contributing to a determination of domicile "include family, business activities and social connections." OAR 150-316.027(1)(1)(a).

"The law is also clear that once domicile is established or determined to be in a particular location, it remains there until the person establishes a new domicile." *Duncan v. Dept. of Rev.*, (*Duncan*) TC No 4315, WL 792454 at *1 (Nov 3, 1998).

In order to change one's domicile, the individual must (a) intend to abandon their former domicile; (b) acquire a new domicile; and (c) actually reside in the new home or residence. *Davis v. Dept. of Rev.*(*Davis*), 13 OTR 260, 264 (1995) (*citing In Re Noyes' Estate*, 182 Or 1, 185 P2d 555 (1947) (stating that "[i]n order to change domicile, an individual must not only establish a residence in the new place but have an intention to abandon the old domicile and acquire a new one").

Although the standard of proof is a preponderance, which is simply "more likely than not," the evidence in this case falls short of that threshold. Plaintiff testified that she considered herself to be a resident of Oregon, domiciled in this state, in 2007. It was thus incumbent upon Plaintiff to persuade the trier of fact (the court) that she established a new domicile in Washington. *Duncan*, WL 792454 at *1. As stated above, Plaintiff must satisfactorily

demonstrate that she abandoned Oregon as a domicile, acquired a domicile in Washington, and actually resided in a home or residence in Washington. *Davis*, 13 OTR at 264.

As far as Plaintiff's connections to Washington, all the court is able to consider is Plaintiff's testimony. Plaintiff testified that she moved to Washington, and that she lived and worked there all of 2008 and approximately half of 2009, but there is virtually no evidence to corroborate that claim. Plaintiff's testimony was strikingly brief and many key points were not addressed.

For example, Plaintiff testified that she rented the home in Washington, but did not testify as to whether she paid the rent in cash or by check, or whether she ever actually paid any rent at all. The owner of the home Plaintiff allegedly lived in all year sent a letter to Defendant, which Defendant submitted into evidence, that indicates that the parties entered into a "verbal contractual lease agreement for a period of time in 2008 and 2009," and that Plaintiff "agreed to an amount of $500 monthly in rent * * *." (Def's Ex C at 1.) Plaintiff was aware Defendant would raise the issue at trial because it was addressed prior to trial, and Plaintiff was given an opportunity prior to trial as well as at the actual trial itself, to provide any information, documentary or otherwise, that would provide some clarity on that issue (*e.g.*, a written statement that rent was paid in cash or by check,[8] copies of canceled checks written to the homeowner/landlord, or a more detailed statement from the owner of the home in Washington that Plaintiff in fact paid the rent agreed to in the verbal agreement between the parties).

It is not clear to the court that Plaintiff even lived in Washington on a full-time basis in 2008, let alone became a Washington domiciliary. Plaintiff did not provide any testimony or documentary evidence of any commercial transactions in the state of Washington at any time in

---

[8] If Plaintiff had established that she paid her rent in cash, that would explain the absence of any form of independent proof such as canceled checks or bank statements substantiating the rental payments.

2008. There are no receipts, canceled checks, or bank statements showing that Plaintiff bought any gasoline for her vehicle while she was in Washington in 2008. Nor is there any evidence she made any retail purchases in that state in that year. What the evidence does show is that in early December 2007 Plaintiff broke up with her boyfriend. Plaintiff had no job. Plaintiff had lived in Washington on two prior occasions, once to attend college for approximately four years (from 1992 to 1996), and then again several years later for reasons not made known to the court.

Plaintiff clearly had ties to Oregon before moving to Washington, if indeed, she did actually move to that state in 2008. She was born and raised in Oregon, and both her parents lived in Oregon in 2008.

The only evidence the court has regarding Plaintiff's claim that she was a Washington resident/domiciliary is Plaintiff's uncorroborated testimony. Much of the evidence contradicts that claim. For example, Plaintiff registered her automobile in Oregon on December 24, 2007, just several days before the day Plaintiff testified that she moved some of her belongings to Seattle on December 28, 2007.

Plaintiff had an Oregon driver's license and was registered to vote in Oregon. Plaintiff did not surrender her Oregon driver's license for a Washington license. Nor did she register to vote in Washington, at least not after allegedly moving from Oregon to Washington in late 2007 or early 2008.

Moreover, Plaintiff twice visited the Oregon DMV office in Bend in 2008 to request duplicates of her Oregon driver's license: once in August 2008 and again on December 26, 2008. Plaintiff testified that she was in Oregon in December 2008 "for the holidays," prior to leaving for a trip to Hawaii. Plaintiff did not state the number of days she was in Oregon or when she left for Hawaii.

According to the evidence submitted by Defendant, the duplicate license Plaintiff requested on December 26, 2008, was mailed on December 29, 2008. (Def's Ex A at 1.) Plaintiff testified that she had requested the DMV to send her duplicate license to her father's house in Bend. Plaintiff explained that she used her father's home address on that occasion because the prior duplicate license she had requested to be delivered to her former boyfriend's home was returned as undeliverable, and she wanted to avoid that problem a second time.

Additionally, Plaintiff testified that she had requested that duplicate license in December 2008 because she needed identification for a trip to Hawaii. The court has no information as to when the Hawaii trip began. That is another matter of concern to the court, because it bears on the question of how many days Plaintiff was in Oregon. Plaintiff acknowledges that she was in Bend, Oregon, by December 24, 2008, which is the day she visited the DMV office in that city. The evidence shows that the license was mailed by DMV on December 29, 2008. If Plaintiff was waiting for the receipt of that license to use as identification to board a plane for the trip to Hawaii, then she was in Oregon for at least five days on that one occassion alone.

Some testimony or other evidence as to when Plaintiff left for Hawaii might have been helpful to Plaintiff's case. It seems reasonable that there would be some evidence available regarding the Hawaii vacation that would substantiate Plaintiff's testimony that she went to Hawaii and, more importantly, establish when she left for Hawaii, and from where the flight to Hawaii originated. Airline tickets are typically purchased by credit card and the traveller receives an itinerary and other evidence of the flight. Plaintiff's reference to "the holidays" is very vague.

The court also has concerns with Plaintiff's testimony about her visit to Oregon during the holidays in December 2008. Plaintiff did not testify where she stayed while she was in

Oregon during that time, but she did state that she came "home" on that trip. The court does not place undue significance on that particular phrase, but residency is based on intent and use of the word "home" as opposed to something like "my mother's home" or "back to Oregon to visit family over the holidays," suggests that Plaintiff still considered Oregon to be her home. As indicated earlier, Oregon bases its determination of domicile on intent and a person's words often provide insight into their state of mind; the "place the person regards as home; [their] true, fixed, principal, and permanent home, and the place to which the person intends return and remain even though currently residing elsewhere." *Ashby*, 21 OTR at 51 (internal citation omitted).

Plaintiff was also in Oregon for at least one weekend in October 2008, a fact established by the testimony of both Plaintiff and Smith regarding a speeding ticket Plaintiff received in Oregon on October 12, 2008.

Plaintiff stated in the residency questionnaire she filled out for Defendant prior to trial that she was only in Oregon six days in all of 2008. The evidence set forth immediately above casts doubt on that testimony. Plaintiff provided virtually no testimony about her visit to the Oregon DMV office in August 2008, but she did acknowledge that she personally visited the Bend office to request the duplicate license. Plaintiff was therefore in Oregon on at least three occasions in 2008: in August, October, and for the holidays in December. It would have been helpful to the court if Plaintiff had explained how she determined that she was only in Oregon six days in 2008. As the court has stated, the evidence tends to contradict that statement, which in turn brings Plaintiff's credibility into question. As mentioned earlier, Plaintiff has many ties to Oregon related to licensing and registration of vehicles and voting, as well as her family ties, compared to few or none to the state of Washington.

Finally, Plaintiff testified that when she moved to Washington she had no job and was unable to pay for her move, and that her father paid for her moving expenses. Plaintiff further testified that she moved into a home owned by a friend in Seattle, and agreed to pay rent in the amount of $500 per month. Plaintiff testified that she did not have a job when she moved to Washington, and she did not provide any testimony as to when she first obtained employment. That leaves the court to wonder how Plaintiff was able to pay her rent and all the other personal expenses typically associated with living independently. Plaintiff may well have had financial support from one or more family members or friends, but there was simply no testimony on that issue. Although that fact, in isolation, may not be significant in the determination of Plaintiff's domicile, given the lack of evidence of payment of rent or any evidence that Plaintiff made any purchases in Washington in 2008, the court is left wondering whether Plaintiff lived full-time in Washington, and, more specifically, whether she intended to and did indeed establish her domicile in that state.

Viewing the evidence as a whole, Plaintiff has not established by a preponderance of the evidence that she did indeed abandon Oregon as her domicile. Plaintiff acknowledged on cross-examination that she considered herself domiciled in Oregon in 2007, had lived there for three or four years at that time, and had filed an Oregon full-year resident return for 2007. Plaintiff did not establish by a preponderance of the evidence that she acquired a domicile in Washington.

III. CONCLUSION

The court has carefully and painstakingly reviewed the sworn testimony and limited documentary evidence admitted for trial. The court concludes that Plaintiff has failed to establish by a preponderance of the evidence that she was a Washington resident in 2008. The

court is not persuaded that Plaintiff abandoned her Oregon domicile or established a Washington domicile. Accordingly, Defendant's assessment of a tax in the amount of $1909, plus penalty and interest, is upheld. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ___ day of May 2014.


_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Dan Robinson on May 13, 2014. The court filed and entered this document on May 13, 2014.*